FRANK BARTHOLF, PLAINTIFF-APPELLANT, v. BOARD
OF REVIEW, DIVISION OF EMPLOYMENT SECURITY,
AND NEW JERSEY BELL TELEPHONE COMPANY, DE-
FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued May 31, 1955—Decided July 1, 1955.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. James Mercer Davis, Jr.,* argued the cause for appellant (*Messrs. Mayer, Weiner & Mayer,* of the New York Bar, attorneys; *Mr. Abraham Weiner* and *Mr. Thomas Murphy,* on the brief).

*Mr. Clarence F. McGovern* argued the cause for respondent Board of Review, Division of Employment Security, Department of Labor and Industry.

*Mr. Frederick W. Nixon* argued the cause for respondent, New Jersey Bell Telephone Company.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D.   Plaintiff appeals from a decision and order of the Board of Review, Division of Employment Security, Department of Labor and Industry, denying his claim for unemployment compensation benefits because he could not establish 17 base weeks of employment in his base year.   In so holding, the board rejected his contention that weeks during which he received disability benefits under his

employer's state-approved private plan should be counted along with the 14 weeks in which he actually worked and received more than $15 a week remuneration.

Plaintiff had been employed by defendant New Jersey Bell Telephone Company for more than 40 years. On June 30, 1953 he was retired on pension, having that month reached the age of 65. At the time of retirement plaintiff was earning $96 a week.

On September 28, 1953 plaintiff filed a claim for unemployment compensation benefits with the Division of Employment Security. His base year, determined in accordance with *N. J. S. A.* 43:21–19(c)(2), ran from September 21, 1952 to September 19, 1953. To succeed in his claim he was required by law (*N. J. S. A.* 43:21–4(e)) to establish, with respect to his base year, 17 base weeks as defined in *N. J. S. A.* 43:21–19(t):

" 'Base week' means any calendar week of an individual's base year during which he earned in employment from an employer remuneration equal to not less than Fifteen Dollars ($15.00) ; * * *."

Plaintiff was intermittently absent from his job because of illness during several weeks in the period from September 21, 1952 to February 24, 1953, and continually thereafter until the termination of his employment on June 30, 1953. It is undisputed that during such periods of absence plaintiff was carried on the company's payroll as an employee. Nor is it disputed that the payments made to him during his illness were based upon his weekly pay: when he was absent for the entire week he was paid disability benefits in the same amount as his weekly pay, $96; when he was absent only part of the week, the benefits were prorated to that amount. In any case, plaintiff received a full $96 a week, minus income tax withheld, whether he was on the job or absent therefrom because of illness.

The disability benefits to plaintiff were made in accordance with the defendant company's "Plan for Employees' Pensions, Disability Benefits and Death Benefits." The plan has been in effect since 1913, with minor changes to keep it up-to-date. It

therefore antedated the adoption of the Temporary Disability Benefits Law, *N. J. S. A.* 43:21–25 *et seq.*, and currently complies with the requirements of that act, · having been approved by the Division of Employment Security. *N. J. S. A.* 43:21–32. Section 6 of the company plan provides that all employees with more than two years of employment shall receive sickness disability benefits thereunder for designated periods of absence because of illness. These payments are on a graduated scale, running from four weeks of full pay and nine weeks of half-pay for those employed from two to five years, up to full pay for 52 weeks in the case of an employee who, like plaintiff, had been with the company for 25 years or more. The same section provides that employees "shall not be entitled to receive sickness disability benefits for time for which any wages are paid them by the Company." The company representative testified that employees with less than two years' service are covered by the state plan for disability benefits, those with more than two years' service being covered by the company's state-approved private plan.

Inasmuch as plaintiff's pension after his retirement on June 30, 1953 would have amounted to less than the sickness disability benefit of $96 a week, the company continued to pay that amount to him through September 22, 1953, when the reduced pension amount came into effect. It was then, on September 28, 1953, that plaintiff filed his claim for unemployment compensation benefits. The company thereupon reported to the Division of Employment Security that plaintiff had only 14 base weeks of employment in his base year. It did not count as weeks of employment those weeks when plaintiff was absent because of illness. The state agency accordingly sent plaintiff a notice of invalid claim on October 6, 1953 because there were less than 17 base weeks within his base year. He did not dispute the determination at the time, but accepted the 14 base weeks as a true record of his employment. It was only after his request for a predating of his claim from September 28 to June 9, 1953 was denied that he appealed, and in his appeal raised

the question as to the erroneous calculation of the number of base weeks of employment with which he should have been credited. After considering the appeal, the Appeal Tribunal of the Division of Employment Security affirmed the state agency's determination that the claim for unemployment compensation was invalid and that there could be no predate to June 9, 1953.

On appeal to the Board of Review the decision of the Appeal Tribunal was affirmed. Plaintiff then moved that the board reconsider its decision, whereupon the board on April 12, 1954 held that the weeks during which plaintiff received sickness disability benefits from the company had to be counted as weeks of employment and his claim was therefore valid. It also held that after filing his claim he had been able to work, wanted to work and was actively seeking work, so that he was "available for work" within the requirements of the Unemployment Compensation Act, *N. J. S. A.* 43 :21–4(*c*). The Board thereupon reversed the decision of the Appeal Tribunal. The employer was then granted an order to show cause why this decision should not be set aside and a new decision made. The claimant and the company appeared, both represented by counsel. After hearing, the board set aside its decision of April 12, 1954 and held plaintiff's claim invalid because he had shown only 14 weeks of undisputed employment. In doing so it refused to accept completely the company's argument that services must be performed in order for disability benefit payments to be characterized as "remuneration" under *N. J. S. A.* 43 :21–19(*i*), (*o*) and (*p*), referred to hereafter. It held that "remuneration may be paid for services either actually performed or which the individual must be available to perform even though he is not actually called upon to do so (as in the case of vacations or holidays)"; that it was immaterial what the company's practice was before the adoption of the Temporary Disability Benefits Act, *N. J. S. A.* 43 :21–25 *et seq.*, in 1948; that when the company plan was accepted as a private plan (*N. J. S. A.* 43 :21–32) it became a method of paying benefits, regardless of its former character; and that the benefit payments made

during the weeks of plaintiff's illness were clearly not "re-muneration" so as to entitle plaintiff to have those weeks counted in determining whether he had 17 base weeks of employment in his base year. The rationale of the board's decision thus appears to be that a claimant must be available for services even though not performing them, in order to be in employment during a period when, as here, there was a conceded employment relationship; and that plaintiff, being ill, was not available and therefore not in employment during the weeks he was absent because of illness.

The determination of the question before us requires consideration of other statutory definitions besides that of "base week" (*N. J. S. A.* 43:21–19(*t*)) quoted above and which refers to the minimum amount of weekly remuneration "earned in employment." *N. J. S. A.* 43:21–19(*i*)(1) defines "employment" as "service * * * performed for remuneration or under any contract of hire, written or oral, express or implied." Under *N. J. S. A.* 43:21–19(*o*) "wages" means "remuneration payable by employers for employment." And *N. J. S. A.* 43:21–19(*p*) defines "remuneration" as "all compensation for personal services, including *commissions* and bonuses and the cash value of all compensation in any medium other than cash." The payment to plaintiff of sickness disability benefits under the company's state-approved plan cannot, in the light of these statutory definitions, be considered as remuneration "earned in employment," nor as wages or compensation "for personal services."

The stated purpose of the Temporary Disability Benefits Act, as set out under *N. J. S. A.* 43:21–26, lends further support to this conclusion. The Legislature there announced that it was "desirable and necessary to fill the gap in existing provisions for protection against the loss of earnings caused by involuntary unemployment by extending such protection to meet the hazard of earnings loss due to inability to work caused by nonoccupational sickness or accident." The disability benefits voluntarily paid by the company were made under a plan designed to relieve its

employees, among them the present claimant, from economic loss and stress during periods when they were sick and unable to work. We have already adverted to the fact that the company plan itself draws a distinction between benefits and wages: employees were not to be entitled to receive disability benefits for time for which the company paid them wages. The plan being contractual in nature, its terms are binding upon the parties.

Plaintiff contends that the only issue in this case is whether he was in the employment of defendant company during at least 17 weeks in his base year before he was retired on pension. The important element is the employer and employee relationship; if such relationship exists and the employee is receiving disability benefits equal to the full pay he would ordinarily receive if he were at work, then he is in employment and, in the circumstances here present, entitled to unemployment compensation benefits. It does not matter that services were not actually performed for the employer or that plaintiff was not available for work because of sickness. So goes his argument.

The issue as we see it is not as plaintiff states it, but rather whether, in the terms of the statute, he earned remuneration in employment for 17 base weeks in his base year. Reference to the definitions contained in the Temporary Disability Benefits Act demonstrates that "benefits" are not synonymous with "remuneration." Plaintiff lays great stress upon the decision of this court in *Paramus Bathing Beach, Inc., v. Division of Employment Security*, 31 *N. J. Super*. 128 (*App. Div.* 1954). The only question there was whether the appellant company was an employing unit having in employment in each of 20 different weeks four or more individuals within the purview of *N. J. S. A.* 43:21–19(*h*) (1). The case is distinguishable because the employee-officers were paid salaries on an annual or monthly basis, without respect to any particular services rendered by them or any particular period of the corporate fiscal year. Although the employees performed no services in some weeks, they were available for service at any time during the fiscal year. The

question posed in the present case—whether weeks during which a claimant received disability benefits may be counted as base weeks during which he earned remuneration in employment under *N. J. S. A.* 43:21–4(*e*) and 43:21–19(*l*)—was not involved or considered in that case. The court stated that "A contractual readiness to serve may be employment and service" (31 *N. J. Super.*, at *page* 133), and held that the employees in question came within the statutory definition of "employment" contained in *N. J. S. A.* 43:21–19(*i*) (1) in that service was performed for remuneration or under a contract of hire.

Here plaintiff did not earn remuneration in 17 weeks of his base year as required by the applicable law, *N. J. S. A.* 43:21–19(*t*). *Cf. Commercial Motor Freight v. Ebright,* 143 *Ohio St.* 127; 54 *N. E. 2d* 297 (*Sup. Ct.* 1944), *Panther Creek Mines, Inc., v. Murphy, Director of Labor,* 390 *Ill.* 23, 60 *N. E. 2d* 217 (*Sup. Ct.* 1945), which support defendant's contention that wages are only paid when the employee performs service or earns remuneration. This in no way conflicts with the *Paramus* case where the court, in illustrating that the presence of the employer-employee relationship is not necessarily conditional upon the concurrent performance of some actual exertion by the employee, cited the example of "intervals of illness or disability * * * during which the employment with pay continues." It should again be emphasized that the court was there considering whether the appellant company could be considered an employing unit within the import of the statute, and not the question posed to us by the instant appeal. The example cited by the court in *Paramus* is not at all applicable here. While periods of occasional or incidental illness for which the employer nevertheless pays the employee the usual wages as a matter of custom or policy may be regarded as qualifying base weeks—a point not here to be decided—there is therein no analogy to a period of illness in respect to which the employer is paying the equivalent of statutory disability payments, the case here.

Defendant company's private plan, approved by the State of New Jersey through its agency, the Division of

Employment Security, is part of the enlightened program projected by the Temporary Disability Benefits Act whose purpose, as stated, is to fill the gap left by the Unemployment Compensation Act. It is clear, from the above-quoted legislative statement of public policy, that benefits paid under the Temporary Disability Benefits Act are compensation for wage loss during illness or disability, and cannot be deemed wages or remuneration. As was said in *Glover v. Simmons Company*, 17 *N. J.* 313, 319 (1955) :

> "The construction of a broad sweeping remedial statute such as this is controlled by the rule that the manifest policy of a statute is an implied limitation on the sense of the general terms and a touchstone for the expansion of the narrower terms, *Wene v. Meyner*, 13 *N. J.* 185 (1953), and the judicial function is to interpret and reconcile statute phraseology in the light of legislative purpose, *De Lorenzo v. City of Hackensack*, 9 *N. J.* 379 (1952).
>
> The motive which led to the enactment of the statute is one of the most certain means of establishing its true sense, and it is not the words of the law but the internal sense of it that makes it law; and the declared policy is the key to the understanding of the statute. *Valenti v. Board of Review of Unemployment Compensation Comm.*, 4 *N. J.* 287 (1950) ; *In re Roche's Estate*, 16 *N. J.* 579 (1954)."

Plaintiff argues that because courts and administrative agencies have held that an individual is "employed" or "in employment" when he is paid wages during vacations or for other time not worked, it follows that the sickness disability benefits here made should be similarly treated. However, in cases cited by plaintiff the description of the payments shows that they were specifically classified as "vacation pay," "holiday pay," or "back pay"—in short, wages or remuneration granted to the employee in return for services due the employer but which the employer has foregone.

Thus, in *Battaglia v. Board of Review, etc.*, 14 *N. J. Super.* 24 (*App. Div.* 1951), the question for determination was whether one who, although laid off, received vacation pay, was entitled to unemployment benefits for the weeks for which he received the vacation pay. Unlike this case, *Battaglia* did not involve the question of qualifying for unemployment compensation benefits. The court there held that "It

can not be said that because one is unemployed during stated periods, he is entitled to benefits when he has received compensation by way of vacation pay for those periods," citing cases from other jurisdictions in accord.

Plaintiff also relies upon *Draus v. Board of Review, etc.,* 13 *N. J. Super.* 231 (*App. Div.* 1951), dealing with holiday pay. Here, again, the cited case did not deal with the issue before us. Involved was a company-union contract which provided for the payment of a day's wages to employees entitled thereto for certain specified holidays, including July 4. The court held that the extra day's pay by the company for July 4 could properly be deducted from the employee's unemployment compensation benefits. Accord: *General Motors Corporation v. Michigan Unemployment Comp. Com.,* 331 *Mich.* 303, 49 *N. W. 2d* 305 (*Sup. Ct.* 1951) which held that pay for a holiday not worked was an emolument earned during the holiday week.

A third line of decisions cited by plaintiff are those relating to reinstatement with back pay. What appears to be the leading case on the subject of back pay as "wages" is *Social Security Board v. Nierotko,* 327 *U. S.* 358, 66 *S. Ct.* 637, 90 *L. Ed.* 718, 162 *A. L. R.* 1445 (1946), where the United States Supreme Court held that back pay awarded for wrongful discharge must be treated under the Social Security Act as "wages" for which the employee was entitled to credit on his old age and survivors insurance account. The court based its decision upon the definition of wages in the federal law which was like the one in the New Jersey Unemployment Compensation Act, "all remuneration for employment." (Section 210 of the Social Security Act) The *Nierotko* court did not, of course, decide the question of whether disability benefits constituted wages because that issue was not before it for decision. The back pay awarded in that case was synonymous with wages or remuneration which would have been earned in employment but for the employer's wrongful act.

We have no criticism of the vacation, holiday and back pay cases where payments made could logically be equated

with wages earned in employment. These situations differ completely from the one before us where the disability benefits were in fact payments intended to replace wage loss caused by illness, and this to the knowledge and with the complete understanding and agreement of both employee and employer.

Our Unemployment Compensation Act includes a provision that the rate of contributions by employer and employee shall be based, in the one case, upon wages paid for services, *N. J. S. A.* 43:21–7(*b*) (2), and in the other upon wages paid by the employer with respect to the worker's employment, *N. J. S. A.* 43:21–7(*d*). The record shows that plaintiff's rate of pay and his benefit rate were the same, but that no deductions were made from disability benefit payments. The reason for the practice is because the act places the status of wages only on those monies which represent remuneration for services rendered and which are paid *for* employment rather than *because* of employment. This further strengthens the distinguishing characteristics which exist between wages and sickness benefits, already established in our consideration of the definitions contained in *N. J. S. A.* 43:21–19, above. *Cf. United States v. Silk*, 331 *U. S.* 704, 67 *S. Ct.* 1463, 91 *L. Ed.* 1757 (1947), which recognizes the relationship between the tax sections and the benefit sections of the Federal Social Security Act.

In fixing the qualifying requirement that a claimant establish 17 base weeks in his base year during which he has earned remuneration in employment (*N. J. S. A.* 43:21–4(*e*); *N.J.S.A.* 43:21–19(*t*)), the Legislature must have given consideration to the fact that at least during that many weeks there would have been deductions from the employee's wages, and contributions by the employer to the fund provided by law. If that were not so, the solvency of the fund would become endangered, to the detriment of the many employees throughout the State for whose benefit the legislation was enacted. In *N. J. S. A.* 43:21–2, which sets out the declaration of public policy in connection with unemployment compensation, the Legislature has stated the legislative objectives, which

include the need for protecting unemployed workers by "the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment," and to that end to require "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."

The fact that wages are by judicial construction confined to their usual and customary meaning in the contributions sections of the various state laws leads to the conclusion that they must be similarly treated in those provisions which set forth the requirements imposed upon an employee before he can qualify for benefits.

■ We find the provisions of the Unemployment Compensation Act clear and unambiguous in their requirement that eligibility to receive unemployment benefits depends, among other things, upon the payment by the employer to his employee of 17 weeks of remuneration earned in employment during his base year. In the absence of other definitions than those contained in *N. J. S. A.* 43:21–19(*o*) and (*p*), the word "wages" or "remuneration" must be given the meaning which the Legislature intended in the light of the purpose of the act, to alleviate the distress which accompanies involuntary unemployment. A statute which is clear and unambiguous on its face cannot and should not be interpreted by a court. 2 *Sutherland, Statutory Construction* (*3d ed.*), § 4502. See *Alexander Hamilton Hotel Corp. v. Board of Review, etc.,* 127 *N. J. L.* 184, 187 (*Sup. Ct.* 1941), cited with approval in *Lynch v. Borough of Edgewater,* 8 *N. J.* 279, 286 (1951), where our former Supreme Court, speaking on the question of statutory construction, said:

"\* \* \* When the terms are explicit, they are presumed to express the full intention of the lawmaker. This is a primary canon governing the exposition of a statute. Plain and unambiguous words not rendered dubious by the context cannot be controlled by judicial construction. 'Liberal' construction does not connote a disregard of the plain meaning of the language employed to express the legislative object \* \* \* an extension of the boundaries delineated by the terms as commonly used, unless the context clearly discloses a special usage. \* \* \*"

Affirmed.