JOSEPH DiMICELE, *ET AL.*, PLAINTIFFS-APPELLANTS, v. GENERAL MOTORS CORPORATION AND BOARD OF REVIEW OF DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued January 20, 1959—Decided March 16, 1959.

*Mr. Albert L. Kessler* argued the cause for the appellants (*Messrs. Weiner, Weiner & Glennon,* attorneys).

*Mr. Elmer J. Bennett* argued the cause for respondent General Motors Corporation (*Mr. Laurence Reich,* on the brief; *Messrs. Carpenter, Bennett & Morrissey,* attorneys).

*Mr. Edward A. Kaplan* argued the cause for the respondent Board of Review (*Mr. Clarence F. McGovern,* attorney).

The opinion of the court was delivered by

HEHER, J. The appeal here concerns the right of the plaintiff employees of the defendant General Motors Corpora-

tion to employment benefits under *N. J. S. A.* 43:21-1 *et seq.* in these circumstances: Pursuant to notice given its employees and their union, the defendant corporation's Linden, New Jersey, plant was closed to normal operations beginning Thursday, June 28, 1956, and continuing through Wednesday, July 4, 1956, for the purpose of taking the annual inventory. The advance notice of the layoff informed the employees that regular plant operations would be resumed at the usual time on Thursday, July 5, 1956, and the claimant employees would receive holiday pay for Independence Day, July 4, 1956, in keeping with the provisions of the then current collective bargaining agreement between the employer and the union. The claimants reported for work at the plant on July 5, 1956 in accordance with the notice so given. The employer's payroll week is and then was the period of seven consecutive days commencing Monday and ending Sunday. In the payroll week ending July 1, 1956 the claimants worked on Monday, Tuesday and Wednesday, June 25 to June 27, 1956, inclusive, when the planned layoff began; and, as said, the return to work was on Thursday, July 5 ensuing, in the payroll week ending July 8. The claimants performed no service during the layoff; but they all received holiday pay for July 4, 1956 varying, according to the individual claimant's daily wage rate, from $16.84 to $18.80.

In the several payroll weeks ending July 1 and 8, 1956, the latter week including the holiday pay, the claimants all earned more than their weekly benefit rate of $35.

The Division of Employment Security denied benefits under the statute on the ground that the claimants had earned more than their weekly benefit rate during each of the given payroll weeks ending July 1 and July 8. On appeal, the Division's Appeal Tribunal affirmed the determination thus made, holding that employees claiming partial benefits "are limited to the employer's payroll week." The Board of Review reversed on what was later found to be an erroneous factual assumption that the claimants had been laid off "indefinitely without promise of early recall," and then

affirmed after proof on further hearing that the layoff was in fact for a definite period, and the claimants are ineligible for benefits.

The Appellate Division of the Superior Court affirmed the administrative action, 51 *N. J. Super.* 167 (1958); and we certified the judgment for appeal. 28 *N. J.* 35 (1958).

The argument *contra* is that the "benefit week 'shall be any seven-consecutive-day period of unemployment chosen by the individual,' and is not confined to the payroll week," citing *Teichler v. Curtiss-Wright Corporation,* 24 *N. J.* 585, 586 (1957); "[t]otal benefits must be paid during any seven-consecutive-day period, although partial benefits are limited to a payroll week," a "policy" dictated by the "administrative burden of accepting the filing of claims on the first day of unemployment." In a word, the insistence is that upon the "commencement of his unemployment period, a claimant cannot foresee and determine at that time whether a claim should be filed on the basis of partial unemployment or total unemployment because he cannot then know the period of his unemployment nor the likelihood of other employment," and if the Legislature "had intended that the payroll week should coincide with the seven-consecutive days of unemployment as the regulation requires, then all the amendments and changes made during the recent years would have included this intention which the Legislature never found necessary or wise to adopt in accordance with the change which was made in Regulation 22.02"; and if this regulation applies to all claims of "partial benefits, then a distinction should not be made on the basis of a payroll period of seven consecutive days." The Division of Employment Security, it is said, "is not empowered to take over the legislative functions nor may it limit the beneficent purposes of a statute as intended by Legislature."

In sum, it is affirmed that if the work done on Monday, Tuesday and Wednesday, June 25 to 27, 1956, inclusive, "had been included in the same week with the work done on Thursday and Friday, July 5 and 6, then the claimants would certainly have received a week of unemployment com-

pensation benefits whether in the first or in the second week"; and that the Division's function is to promulgate administrative "rules and practices," but not to make "substantive changes" in the law. The employer denies the right to unemployment compensation benefits "where there was no period of 7 consecutive days during which they were totally unemployed and where there was no payroll week during which they received less than their weekly benefit rate."

It is clear beyond peradventure that the layoff was not indefinite; the claimants knew they would return to work on July 5.

The question is essentially one of statutory construction. Under *R. S.* 43:21-3 (*b*), as last amended by *L.* 1955, *c.* 203, the individual, if eligible and unemployed, as defined in *R. S.* 43:21-19 (*m*), shall be paid "an amount (except as to final payment) equal to his weekly benefit rate with respect to any week in which he has earned no remuneration or remuneration equal to less than $\frac{1}{2}$ said rate, or shall be paid an amount equal to $\frac{1}{2}$ his weekly benefit rate with respect to any week in which he has earned remuneration equal to or more than $\frac{1}{2}$ said rate but less than said rate." And *R. S.* 43:21-19 (*m*), as last amended by *L.* 1956, *c.* 65, defines "unemployment" thus: (1) An individual shall be deemed " 'unemployed' for any week during which he is not engaged in full-time work and with respect to which his remuneration is less than his weekly benefit rate, * * *." "Remuneration" means, *R. S.* 43:21-19 (*p*), "all compensation for personal services, including commissions and bonuses and the cash value of all compensation in any medium other than cash"; and "week" is defined, *R. S.* 43:21-19 (*q*), as "such period or periods of 7 consecutive days ending at midnight, as the division may by regulation prescribe."

In the purported exercise of this delegated power and, perhaps, the rule-making function under *R. S.* 43:21-11 (*a*), as amended by *L.* 1952, *c.* 187, for the due administration of the basic statutory policy, the Division, by regulations promulgated in 1953, defined "Week of Total Unemploy-

ment," Regulation 22.01(a), as a "week in which an individual performs no services and with respect to which he receives no remuneration"; and a "Week of Partial Unemployment," Regulation 22.01(b), as a "week in which an individual performs some services and/or earns * * * less than an amount equal to his weekly benefit rate * * *." And Regulation 22.02(a) provides that a "benefit week with respect to any partially unemployed individual who is employed by a regular employer or employing unit on the basis of a payroll period of seven consecutive days and who works less than his normal customary full-time hours for such employer or employing unit because of lack of full-time work shall coincide with such payroll period"; (b) a "benefit week" for a "partially unemployed individual" employed by a regular employer or employing unit "on other than a weekly basis shall be any seven-consecutive-day period of unemployment chosen by the individual," provided that "no day of unemployment shall occur in more than one such week"; and (c) a "benefit week" for "any other individual shall be any seven-consecutive-day period of unemployment chosen by the individual," also provided that no day of unemployment shall occur in more than one such week.

Thus, if the individual claimant received "remuneration" for the "week" in question not in excess of half his weekly benefit rate, he would be eligible for benefits in an amount equal to his rate; but if, on the other hand, such "remuneration" exceeded half his weekly benefit rate, although less than the full rate, he would be eligible for benefits in an amount equal to half his rate.

Here, the respective claimants' weekly benefit rate is the maximum of $35, as prescribed by R. S. 43:21–3(c)(3); and the standard "week" in the application of the statutory formula is the payroll week, in virtue of the statute and the implementing regulations designed to fulfill the essential legislative policy—the unit adopted by the parties themselves in the execution of the contract of service. As said, the payroll weeks here ended July 1 and July 8; and in

each of these weeks the several claimants performed less than full-time work, yet earned and received remuneration in excess of their weekly benefit rate, even though the holiday pay be disregarded. And so, the claimants were not "unemployed" in statutory intendment during either week and are not eligible for benefits.

Under Regulations 22.01 and 22.02 those eligible for benefits fall into two categories: the "totally unemployed," and the "partially unemployed" who are in regular employment "on the basis of a payroll period of seven consecutive days" and who work less than customary full-time for "lack of full-time work," and in such cases the "benefit week" shall "coincide with such payroll period." The choice of the benefit week is in all seeming given only to claimants totally unemployed or those partially unemployed who are in regular employment on the basis of a nonweekly payroll.

There is no week of total unemployment within the intendment of Regulation 22.01(a); there is no seven-consecutive-day period of unemployment, either coinciding or not with the payroll week, and so the claimants are but partially unemployed and the benefit week must coincide with the payroll week. The claimants severally received "remuneration" within the concept of the statute in the form of holiday pay for July 4; and such being the case, they were partially unemployed but for a period which did not coincide with the payroll week; they were not unemployed during either of the two payroll periods of partial unemployment within the intendment of *R. S.* 43:21–19(*m*)(1), as amended, and so they are not entitled to partial unemployment benefits or waiting week credit.

It is said that the "very purpose of holiday pay would be overcome if employees who did not work for a week were ineligible for unemployment compensation"; that "[h]oliday pay is in the nature of a bonus and should never be construed with penalizing effects," and it would disserve the policy of the statute were the payroll or benefit week so defined as to exclude "seven consecutive days of unemployment" as the measure of eligibility to compensation. But

the argument is not well premised, and it begs the question. The meaning of a statute, clear and explicit in terms, cannot be enlarged or modified to accord with what might in popular view be deemed to be a more politic contrivance. The making of law, it has been said, is an exercise of the will of the state; the judicial function is an exercise of the reason of the judge in the interpretation and application of the law, to fulfill the intention of the lawmaker.

As said *supra,* the Legislature has provided, *R. S.* 43:21-19(*q*), as amended, that "week" shall mean such period or periods of seven consecutive days "as the division may by regulation prescribe," and that for the enforcement of this basic statutory principle, "remuneration" means, *R. S.* 43:21-19(*p*), "all compensation for personal services, including commissions and bonuses"; and, while there was no work done during the seven-day period, the holiday pay for the seventh day of the layoff period plainly falls within the statutory definition of "remuneration" as compensation for services. The holiday pay was essentially that, in accordance with the collective bargaining agreement between the employer and the union representing the employees, although not for service given on the particular day. "Holiday pay" may have a different connotation under other circumstances, but there can be no doubt as to its meaning here when considered in the context of the legislative policy and rule of action.

But it is urged that under *R. S.* 43:21-3(*b*) the "remuneration for the July 4th holiday is not a bar to total benefits"; "[h]oliday pay represents services for the entire year and the remuneration is not given unless there is three months' continuous service prior to the holiday"; a regulation "cannot change this statute, although it may implement the law"; and if Regulation 22.02(a) "applies to all claims of partial benefits, then a distinction should not be made on the basis of a payroll period of seven consecutive days"; the benefit week "shall be any seven-consecutive-day period of unemployment chosen by the individual," and is not confined to the payroll week, and since July 4th "was

the last day of the first benefit week &ast; &ast; &ast; and the holiday pay received as remuneration was a sum less than half the weekly benefit amount," the claimants should have "full compensation for that week so that the law is not being administered discriminately and illegally." Again, it is said that "[t]o allow employers the choice of any seven days during which they could lay off employees who would be ineligible for benefits would be a subversion of the statute," and it is "more logical that the benefit week should govern rather than the payroll week in determining eligibility for unemployment compensation"; and that the employer "may adjust the payroll week, but cannot do so with the benefit week." In a word, it is said that "[t]otal benefits must be paid during any seven-consecutive-day period, although partial benefits are limited to a payroll week."

But the Division has not transcended its delegated powers; and the Legislature has not made an undue delegation of the basic legislative function to the Division. The delegated authority is basically administrative according to a certain and definite policy and rule of action in a field that is peculiarly one for specialized administrative judgment. *Charles Headwear, Inc. v. Board of Review,* 11 *N. J. Super.* 321, 328 (*App. Div.* 1951), Proctor, J. A. D.; *State Board of Milk Control v. Newark Milk Co.,* 118 *N. J. Eq.* 504 (*E. & A.* 1935).

And no one would suggest that those receiving vacation pay would also be entitled to unemployment benefits because no service was rendered during the vacation period—in the science of logic and correct reasoning, *reductio ad absurdum.*

*R. S.* 43:21–19 (*d*), as amended by *L.* 1953, *c.* 218, permitting the filing of a claim for benefits on the first day of the worker's unemployment, plainly does not alter or modify the basic provisions of the statute in relation to the benefit "week." It merely has to do with the filing of a "valid claim" "for the purpose of [that] subsection," perhaps an administrative measure to begin the running of the "benefit

year." At all events, there is no indication of an intention to alter the requirements for benefit eligibility; and a basic change in this regard cannot rest upon uncertain implication.

It is but fair to presume that had the Legislature intended to provide for benefits without regard to the payroll week, it would have said so in clear and explicit terms admitting of no doubt of the purpose: *e. g.*, by an amendment of *R. S.* 43:21–19(*q*), defining "week" as such period or periods of seven consecutive days "as the division may by regulation prescribe." Although there have been numerous amendments of *R. S.* 43:21–19 over the years, subsection (*q*) retains its original substantive terms; and the now-challenged administrative regulations have had their current form without legislative intervention for five years or more.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, BURLING, JACOBS, FRANCIS and PROCTOR—6.

*For reversal*—None.