**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3863-15T4

KENDRA D. BROWN,

    Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR, and ALLIEDBARTON
SECURITY SERVICES,

    Respondents.

_____

Submitted January 16, 2018 — Decided June 13, 2018

Before Judges Ostrer and Whipple.

On appeal from the Board of Review, Department
of Labor, Docket No. 072,656.

Kendra D. Brown, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney
for respondent Board of Review (Melissa Dutton
Schaffer, Assistant Attorney General, of
counsel; Adam K. Phelps, Deputy Attorney
General, on the brief).

Respondent AlliedBarton Security Services has
not filed a brief.

PER CURIAM

Claimant Kendra D. Brown appeals from the March 24, 2016 decision of the Board of Review (Board) disqualifying her from receiving unemployment benefits under N.J.S.A. 43:21-5(a) because she left her job voluntarily and without good cause attributable to work. We affirm.

Claimant was employed by AlliedBarton Security Services (AlliedBarton) as a security officer from September 2012 through September 2015, when she left her employment. AlliedBarton contracts to provide security for companies nationwide, including in New Jersey. Claimant was specifically hired to work at Fidessa, a site in Somerset, New Jersey; she worked an overnight shift from 6:00 p.m. to 12:00 a.m.

In June 2015, claimant requested a transfer to a different job site at Horizon, in Ewing, New Jersey, where she believed she could receive full-time employment at a higher pay rate. The handbook detailing the policies and procedures followed by AlliedBarton, which was given to claimant when she was hired, provided that the company would make all efforts to accommodate transfer requests, but they were not guaranteed.

On July 1, 2015, claimant met with AlliedBarton's Regional Director of Human Resources, Jeanette Whitman-Lee, who told claimant because she was hired for a particular position at a particular site, her current position at Fidessa would first have

to be filled. After that position was filled, she would be placed in the "reassignment pool" and would be considered for any open positions. In the meantime, she was not prohibited from applying to and interviewing with the recruiters at any job sites where she wished to be transferred.

Later that week, claimant met with the field operations manager in charge of Fidessa, Salvatore Cifone. He informed claimant he was not approving any transfers until he filled all currently open positions because that would inconvenience Fidessa. Claimant became upset, informed him that she was recording their conversation, and asserted that he was blocking her transfer because of a personal issue with her. Cifone assured her that his reasons were solely business related. That same month, he put in a job requisition to begin the process of filling claimant's position at Fidessa so that she might transfer.

Thereafter, claimant spoke on the phone to the field operations manager for Horizon. However, she did not formally apply or request an interview for this job site.

At the end of July 2015, claimant filed civil rights complaints against AlliedBarton with the Equal Employment Opportunity Commission. She alleged discrimination due to an underlying medical condition and retaliation, asserting other employees had been allowed to transfer to new job sites.

On August 20, 2015, Cifone informally reprimanded claimant for trading shifts with another security officer without notifying him as required by AlliedBarton policies and procedures. Again, claimant became upset, arguing Cifone had a personal issue with her.

On or around August 24, 2015, AlliedBarton hired a new security guard to fill claimant's position. However, when the new guard arrived at work, claimant initially refused to train her, complained she had not been notified in advance, and did not believe the new guard had the authorization to be on Fidessa property. Cifone claimed he had tried to notify claimant in advance, but she did not answer the phone and did not have voicemail. It was only after an argument with Cifone that claimant agreed to train the new guard.

On August 26, 2015, claimant sent an email to Cifone requesting to see her employee file, which he forwarded to human resources. Human resources agreed to accommodate this request, but on August 28, claimant withdrew her request to see the file.

That same week, Cifone conducted a site inspection and noticed claimant was not in the correct uniform required by Fidessa. Her uniform shirt was too large, requiring her to wear layers under it, and she was wearing the wrong pants, shoes, and earrings.

A-3863-15T4

On August 31, 2015, Cifone emailed claimant telling her she was removed from Fidessa and instructed her not to report for her shift. He also informed her she should contact him so they could sit down and "discuss the events that transpired last week," but she never reached out.

On September 3, 2015, Whitman-Lee sent claimant a letter via email and regular mail, informing her she needed to speak with her about her performance issues before claimant would be able to return to work. Whitman-Lee asked that this meeting take place before September 11, 2015.

From that point on, claimant refused to schedule a meeting with AlliedBarton, despite repeated attempts to contact her. Claimant asserted it would have been a conflict because of the civil rights complaint, and she wanted to have a third party present at any meeting. AlliedBarton repeatedly told claimant third parties were not allowed in employer-employee meetings, unless they were a designated union representative.

Claimant filed for unemployment benefits, effective as of August 30, 2015. On October 14, 2015, the Deputy of the Division of Unemployment and Disability Insurance (Deputy) concluded that she was disqualified from benefits because her actions were "evidence of [her] intention to sever the employer-employee

relationship." Therefore, he determined claimant had left her job voluntarily and without good cause.

Claimant appealed the decision of the Deputy to the Appeal Tribunal (Tribunal), and a hearing was held on November 18, 2015. After hearing testimony from claimant, Whitman-Lee, and Cifone, the Tribunal found the AlliedBarton representatives provided credible and compelling testimony and the evidence at the hearing established the actions of the company were in accordance with its established policies and procedures. Further, the evidence supported AlliedBarton's position that the "performance issues" the employer wanted to discuss were justifiably tied to violations of policy claimant did in fact commit and not the result of a personal vendetta. Thus, claimant was disqualified because she voluntarily left work, was not subjected to hostile working conditions, and did not make reasonable attempts to remain employed. Accordingly, the Tribunal affirmed the Deputy's decision.

Claimant appealed the Tribunal's decision to the Board of Review (Board). On March 24, 2016, the Board affirmed[1] the

---

[1] However, the Board modified the decision to provide that the disqualification ended as of January 2, 2016, because claimant had gained employment at which she had worked eight weeks and earned "at least ten times the individual's weekly benefit rate." N.J.S.A. 43:21-5(a).

A-3863-15T4

decision of the Tribunal, reasoning claimant had received a full and impartial hearing and there were no grounds for further review. This appeal followed.

On appeal, claimant argues her decision not to meet with human resources without a third party present, as well as her civil rights complaint and various other personal commitments, constitute good cause attributable to work preventing her disqualification. We disagree.

We exercise "a limited role" in the review of administrative agency decisions. In re Stallworth, 208 N.J. 182, 194 (2011) (citation omitted). "In order to reverse an agency's judgment, an appellate court must find the agency's decision to be 'arbitrary, capricious, or unreasonable, or not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)). Lastly, a "strong presumption of reasonableness attaches to the actions of the administrative agencies." In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)).

A reviewing court is limited to determining:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based

its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.

[Mazza v. Bd. of Trustees, 143 N.J. 22, 25 (1995) (citing Campbell v. Dep't of Civil Serv., 39 N.J. 556, 562 (1963)).]

Moreover, we do not substitute our own judgment for the agency's, even though we might have reached a different result. In re Stallworth, 208 N.J. at 194 (quoting In re Carter, 191 N.J. 474, 483 (2007)).

Under N.J.S.A. 43:21-5(a), an individual is disqualified for benefits "[f]or the week in which the individual has left work voluntarily without good cause attributable to such work, and for each week thereafter until the individual becomes reemployed . . . ." "Claimants bear the burden of proof to establish their right to unemployment benefits." Brady v. Bd. of Review, 152 N.J. 197, 218 (1997) (citing Zielenski v. Bd. of Review, 85 N.J. Super. 46, 51 (App. Div. 1964) and DiMicele v. General Motors Corp., 51 N.J. Super. 167, 171 (App. Div. 1958), aff'd, 29 N.J. 427 (1959)). "Furthermore, when an employee leaves work voluntarily, [she] bears the burden to prove [she] did so with good cause attributable to work." Ibid. (citations omitted).

Here, claimant left her job voluntarily. AlliedBarton did not formally discharge her from employment. She had initiated a

job transfer request, and at that time, it was explained to her that the process involved her position being filled, being placed into the reassignment pool, and then applying for the desired position.

Moreover, although she was instructed not to return to Fidessa on August 31, 2015, she was still considered an employee under the AlliedBarton policies and procedures. The AlliedBarton employee handbook provides, "[w]hen an employee's assignment or post ends, he or she is still employed by AlliedBarton[.]" Furthermore, an employee's repeated refusal of future offers of work assignments "will constitute [a] voluntary resignation." Also, "[t]hirty consecutive days of inactive work status and/or lack of [a] response regarding new assignments will be considered [a] voluntary resignation." As such, claimant must show her voluntary resignation was due to good cause attributable to work.

Although good cause is not statutorily defined, "our courts have construed [the phrase] to mean 'cause sufficient to justify an employee's voluntarily leaving the ranks of the employed and joining the ranks of the unemployed.'" Ardan v. Bd. of Review, 444 N.J. Super. 576, 585 (2016) (quoting Domenico v. Board of Review, 192 N.J. Super. 284, 287 (App. Div. 1983)). "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute 'good cause'

for leaving work voluntarily." Associated Util. Servs., Inc. v. Bd. of Review, 131 N.J. Super. 584, 587 (App. Div. 1974) (citations omitted). "In scrutinizing an employee's reason for leaving, the test is one of ordinary common sense and prudence." Domenico, 192 N.J. Super. at 288 (citation omitted). Furthermore, the decision to leave employment "must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Brady, 152 N.J. at 214 (citation omitted).

"[S]exual harassment, racially prejudicial and gender biased comments, and threats of physical violence directed to an employee are abnormal working conditions and constitute good cause for that employee to voluntarily leave her employment." Doering v. Bd. of Review, 203 N.J. Super. 241, 246 (App. Div. 1985) (citations omitted); see Associated Util. Servs., 131 N.J. Super. at 587. However, claims of this nature must be supported by sufficient, credible evidence. Gerber v. Bd. of Review, 313 N.J. Super. 37, 39-40 (App. Div. 1998). Claimant submitted no evidence beyond hearsay statements, allegedly made by a third party, to support her assertions that AlliedBarton discriminated against her because of her medical condition or retaliated against her for filing a civil rights complaint.

The Tribunal found Whitman-Lee and Cifone, the witnesses for AlliedBarton, to be credible. Further, the Tribunal found the

evidence supported that AlliedBarton's actions were in accordance with its policies and procedures, and the actions taken were in response to genuine performance issues related to violations of policy by claimant. We find no basis to disturb the findings of the Tribunal, as relied upon by the Board.

Accordingly, the Board correctly determined that claimant was disqualified for unemployment benefits pursuant to N.J.S.A. 43:21-5(a). The Tribunal's determination, adopted by the Board, that claimant left work voluntarily without good cause attributable to the work is supported by substantial credible evidence in the record as a whole and is not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION