**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1154-17T3

BELINDA MENDEZ-AZZOLLINI,

      Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR,
and IRVINGTON BOARD OF
EDUCATION,

      Respondents.

_____

Submitted December 5, 2018 – Decided March 15, 2019

Before Judges Fuentes and Moynihan.

On appeal from the Board of Review, Department of Labor, Docket No. 125,174.

Caruso Smith Picini, PC, attorneys for appellant (Timothy R. Smith, of counsel; Steven J. Kaflowitz, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent Board of Review (Melissa Dutton Schaffer,

Assistant Attorney General, of counsel; Aaron J. Creuz,
Deputy Attorney General, on the brief).

Respondent Irvington Board of Education has not filed
a brief.

PER CURIAM

Belinda Mendez-Azzollini appeals from the Board of Review's (Board) final administrative decision affirming the Appeal Tribunal's August 14, 2017[1] determination. Appellant argues the Board's statutory interpretation – concluding that, although appellant was paid by her employer, she was also required "to perform the necessary service for remuneration in order to requalify [for unemployment benefits], in accordance with N.J.S.A. 43:21-4(e)(6)" – was erroneous. We agree the Board's interpretation of the eligibility requirements was erroneous and reverse.

Appellant was employed as a guidance counselor for the Irvington Board of Education (employer) until she was removed from her position in June 2016. The employer pursued tenure revocation charges against appellant and during the ensuing arbitration process she was reinstated to her position on January 4, 2017. After the arbitrator rendered her decision, appellant was terminated in

---

[1] The date we refer to is the "mailing date" for the Appeal Tribunal's decision.

A-1154-17T3

late May 2017.[2]  She filed a transitional claim for benefits in late June 2017. Appellant's prior June 2016 unemployment claim established a weekly benefit rate of $657.

In affirming the determination of the Deputy Director of the New Jersey Department of Labor and Workforce Development – Division of Unemployment and Disability Insurance, the Appeal Tribunal concluded appellant was ineligible for benefits under N.J.S.A. 43:21-4(e)(6) which sets forth the eligibility requirements for a claimant who applies for benefits in a successive benefit year after collecting benefits:

> The individual applying for benefits in any successive benefit year has earned at least six times his previous weekly benefit amount and has had four weeks of employment since the beginning of the immediately preceding benefit year.  This provision shall be in addition to the earnings requirements specified in paragraph (4) or (5) of this subsection, as applicable.

It is not disputed that appellant's earnings during her reinstatement from January to May met the statutory requirement or that she was paid for more than four

---

[2]  Various termination dates or dates of last-pay appear in the record:  May 25, 27 and 28, 2017.  The discrepancy does not impact our analysis.

A-1154-17T3

weeks.[3] The Appeal Tribunal considered the statutory definitions of "employment," N.J.S.A. 43:21-19(i)(1)(A); "wages," N.J.S.A. 43:21-19(o); and "remuneration," N.J.S.A. 43:21-19(p) and held "[i]n order to requalify for the successive claim, [appellant] must have 'had four weeks of employment,' which in accordance with [the statutory definition of employment] means she had to have performed service for remuneration."

Appellant, during the period of her reinstatement, was placed on, what was referred to during the Appeal Tribunal hearing as "administrative reassignment." While the tenure arbitration proceedings were pending, the employer directed appellant not to report in accordance with her regular schedule: Monday through Friday from 8:00 a.m. until 3:00 p.m.; she was told not to report to school at all, although she received full pay and made all payroll contributions. The Appeal Tribunal concluded appellant did not perform any service for the remuneration paid by the employer and as such, she did not requalify under N.J.S.A. 43:21-4(e)(6).

Our review of an administrative agency decision is limited. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). Administrative agency decisions are

---

[3] Appellant earned over $28,000 from January to May 2017 based on her annual salary of just under $70,000, far in excess of six times her $657 weekly benefit amount.

A-1154-17T3

sustained unless they are arbitrary, capricious, or unreasonable; unsupported by substantial credible evidence in the record; or contrary to express or implied legislative policies. Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014); Lavezzi v. State, 219 N.J. 163, 171 (2014). "[A]n appellate court should give considerable weight to a state agency's interpretation of a statutory scheme that the [L]egislature has entrusted to the agency to administer." In re Election Law Enf't Comm'n Advisory Op. 01-2008, 201 N.J. 254, 262 (2010). Although we "defer[] to an administrative agency's findings of fact," we owe no deference to an agency's conclusions of law and are "not 'bound by [the] agency's interpretation of a statute or its determination of a strictly legal issue.'" Lavezzi, 219 N.J. at 172 (quoting Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 165 (2013)).

At issue is whether appellant "had four weeks of employment" during her period of reinstatement. N.J.S.A. 43:21-4(e)(6). "Employment" is defined in N.J.S.A. 43:29-19(i)(1)(A) as: "service performed on or after January 1, 1972 . . . for remuneration or under any contract of hire, written or oral, express or implied." Although "'[w]ages' means remuneration paid by employers for employment," N.J.S.A. 43:21-19(o), and "'[r]emuneration' means all compensation for personal services," N.J.S.A. 43:21-19(p), "services" is not

defined by the unemployment compensation law (the Act), N.J.S.A. 43:21-1 to -71.

We follow the familiar statutory-interpretation polestar enunciated by our Supreme Court:

> In construing any statute, we must give words "their ordinary meaning and significance," recognizing that generally the statutory language is "the best indicator of [the Legislature's] intent." DiProspero v. Penn, 183 N.J. 477, 492 (2005); see also N.J.S.A. 1:1-1 (stating that customarily "words and phrases shall be read and construed with their context, and shall . . . be given their generally accepted meaning"). Each statutory provision must be viewed not in isolation but "in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). We will not presume that the Legislature intended a result different from what is indicated by the plain language or add a qualification to a statute that the Legislature chose to omit. DiProspero, 183 N.J. at 493.
>
> On the other hand, if a plain reading of the statutory language is ambiguous, suggesting "more than one plausible interpretation," or leads to an absurd result, then we may look to extrinsic evidence, such as legislative history, committee reports, and contemporaneous construction in search of the Legislature's intent. Id. at 492-93.
>
> [Tumpson v. Farina, 218 N.J. 450, 467-68 (2014) (alterations in original).]

A-1154-17T3

Inasmuch as our analysis involves more than one section of the Act, we heed the Court's prescription that

> [s]tatutes must be read in their entirety; each part or section should be construed in connection with every other part or section to provide a harmonious whole. When reviewing two separate enactments, the Court has an affirmative duty to reconcile them, so as to give effect to both expressions of the lawmakers' will. Statutes that deal with the same matter or subject should be read in pari materia and construed together as a unitary and harmonious whole.
>
> [In re Petition for Referendum on Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (citations omitted).]

The language of N.J.S.A. 43:29-19(i)(1)(A) does not limit "employment" to only those situations involving services if the employee was under any contract. The Board did not consider, nor is the record clear, that appellant was under a contract with the employer. Although it seems obvious she was, in light of her defined days, hours and school year, and from the prosecution of tenure charges, our review is limited by the record. See, e.g., Berk Cohen Assocs. at Rustic Vill., LLC v. Borough of Clayton, 199 N.J. 432, 448 (2009) (refusing to consider possibilities and recognizing the Court is "constrained by the record before" it).

Nonetheless, the record does reveal that appellant was "ready, willing and able to" report for duty; indeed, she desired to work. The only reason she did

A-1154-17T3

not render service to the employer was its decision that she should not. Under those circumstances, we do not read the statutes to require a claimant actually work in order to qualify for benefits. Our unemployment compensation jurisprudence is replete with holdings that recognize that a paid employee need not provide service in order to be considered an employee. In Battaglia v. Board of Review, 14 N.J. Super. 24, 26-27 (App. Div. 1951), we held that an employee who received vacation pay for time he did not work was considered engaged in full-time work and was not unemployed, N.J.S.A. 43:21-19(m). Our Supreme Court recognized similar holdings:

> Our law is well settled that an employee on paid vacation for a definite time, who is to return to his job at the conclusion thereof, remains in "service" and so in employment during the vacation period and consequently is not entitled to claim unemployment benefits therefor. As we said in DiMicele v. General Motors Corporation, 29 N.J. 427, 435 (1959): "And no one would suggest that those receiving vacation pay would also be entitled to unemployment benefits because no service was rendered during the vacation period – in the science of logic and correct reasoning, reductio ad absurdum." To hold otherwise would be completely at variance with the basic purpose of the law to provide some income for the worker earning nothing because he is out of work through no fault or act of his own.
>
> [Butler v. Bakelite Co., 32 N.J. 154, 164-65 (1960).]

We are convinced that an employee need not provide services in order to be considered employed, especially in cases such as this where the employer opts to prohibit the employee from reporting for work. An employer's choice to keep an able-bodied worker from rendering service cannot deprive the worker from benefits. See Myerson v. Bd. of Review, 43 N.J. Super. 196, 201 (App. Div. 1957) ("Unemployment compensation is not to be denied persons merely because the employer or the collective bargaining agreement designates a period of unemployment as a leave of absence."); see also Teichler v. Curtiss-Wright Corp., 24 N.J. 585, 597 (1957) (concluding a ready, willing and able worker left without work and pay because of the employer's decision to temporarily shut down is entitled to benefits).

We are unpersuaded by the Board's argument that our holding in Bartholf v. Board of Review, 36 N.J. Super. 349 (App. Div. 1955) should inform our decision that appellant is disqualified from benefits because she did not earn the remuneration which the employer paid. In Bartholf we concluded that disability benefits paid to a worker did not constitute remuneration so as to impact an employee's unemployment claim. Id. at 355, 357, 359. Instead, we held the benefits were compensation for wage loss during a disability designed "to fill the gap left by the [Act]." Id. at 357; see also id. at 354. We pointed out that,

unlike wages – from which deductions were made as required by law, including those related to funds that pay benefits – disability payments were free from such deductions. Id. at 359. Bartholf is inapposite to this matter. Indeed, the position the Board took in that case supports our holding in this case: "remuneration may be paid for services either actually performed or which the individual must be available to perform even though he is not actually called upon to do so." Id. at 353. The same outcome applies to these facts.

The Act is remedial in nature and must be liberally construed. Teichler, 24 N.J. at 592. In Bartholf, we recognized the legislative objectives of N.J.S.A. 43:21-2

> which include the need for protecting unemployed workers by "the systematic accumulation of funds during periods of employment to provide benefits for periods of unemployment," and to that end to require "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed after qualifying periods of employment."
>
> [36 N.J. Super. at 359-60.]

Construing the statutes in that light, we conclude appellant was employed during her period of reinstatement – during which she was ready, willing and able to report for work – and contributed to the benefits fund from her wages, thus protecting its solvency. The employer's decision to keep her from employment

10

was certainly within its prerogative. Like a coach, employers can, in most instances, pick who plays and who sits the bench. We take no issue with its choice. That choice, however, did not render appellant ineligible for benefits.

Reversed and remanded for proceedings not inconsistent with this decision, if necessary to determine appellant's entitlement. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11