AURA L. GARCIA, APPELLANT, v. BD. OF REVIEW AND STATE OF NEW JERSEY, DIV. OF YOUTH AND FAMILY SERVICES, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 25, 1983—Decided November 15, 1983.

Before Judges ANTELL, JOELSON and McELROY.

*Bennet D. Zurofsky* argued the cause for appellant (*Reitman, Parsonnet, Maisel & Duggan,* attorneys; *Bennet D. Zurofsky* on the brief).

*Lewis A. Scheindlin,* Deputy Attorney General, argued the cause for respondents (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *Michael S. Bokar,* Deputy Attorney General, of counsel and *Lewis A. Scheindlin* on the brief).

The Opinion of the Court was delivered by

ANTELL, P.J.A.D.

This is an appeal from a determination by the Board of Review in the Division of Employment Security affirming the decision of the Appeal Tribunal which denied claimant, Aura Garcia, unemployment compensation benefits following the ter-

mination of her employment with the New Jersey Department of Human Services, Division of Youth and Family Services (DYFS). The determination below rests upon the conclusion that claimant was disqualified for benefits because she left work voluntarily without good cause attributable to her work. *N.J. S.A.* 43:21–5(a). The termination of claimant's employment is related to her absences from work because of alleged illness and her failure to maintain communication with her employer. The question presented is whether her departure from employment was voluntary within the meaning of the statute.

According to the findings of the appeals examiner, claimant worked as a social worker for DYFS approximately 6 years through May 7, 1982. She submitted a doctor's note dated May 8, 1982 to the effect that claimant required rest at home for at least one week. Her supervisor testified that she called in to report her condition on May 12, 14, 17 and May 19, 1982, and, although the evidence was in conflict, the appeals examiner found as a fact that there were no further calls after May 19, 1982. The appeals examiner also found that claimant knew her employer wanted further medical documentation as to her condition.

On June 2, 1982 claimant's superior wrote claimant to advise that she was "considered resigned not in good standing from the employ of New Jersey Division of Youth and Family Services" based on Civil Service Rule 4:1–16.14. The civil service rule relied on provides that:

> Any employee who is absent from duty for five consecutive business days without notice and approval of his superior of the reason for such absence, and the time he expects to return, or who fails to report for duty within five business days after the expiration of any authorized leave shall be held to have resigned not in good standing.

On June 10, 1982 claimant's superior wrote again, enclosing Civil Service Form 31–A which, claimant was told, she could use to "appeal your Resignation Not In Good Standing should you desire to do so." Claimant appealed her termination of employment to the departmental level without success. Another ap-

peal followed to the Civil Service Commission, which was dismissed because not timely filed, an action which is now before the Appellate Division for review in a separate appeal. The conclusion which lies at the heart of the determination before us was expressed by the Appeal Tribunal in the following language:

Although she [claimant] claims not to have wanted to quit she did not take action reasonably calculated to keeping her job.

The test applied by the Appeal Tribunal in the foregoing language was obviously drawn from that approved by the Supreme Court in *DeLorenzo v. Board of Review, Div. of Employment Sec.*, 54 *N.J.* 361 (1969). In that case it was made clear that a failure to report for work because of illness not attributable to the work was not in itself a voluntary quit which disqualified the employee from benefits where he seeks to return to the job after the illness. *Id.* at 364. The test which the Supreme Court there held was the correct one to apply under the statute was then stated in the following language formulated by the Board of Review:

The Board now holds that when an employee becomes ill and does those things reasonably calculated to protect the employment and, notwithstanding that she is not reinstated, there is no voluntary leaving of work. In these matters involving separation from employment for health reasons, the Board now holds that the disqualification arises only upon a finding that the employee, in fact, decided to terminate the employment because the work duties are detrimental to an existing physical condition or state of health which did not have a work connected origin. [*Ibid.*]

The appeals examiner evidently conceived that once having found that claimant failed to do whatever was reasonably calculated to protect her employment that a finding of a voluntary quit necessarily followed. But we understand the import of the foregoing quotation to be that the disqualification occurs only when the employee "in fact" decides to terminate the employment and that such a judgment cannot be made when the employee "does those things reasonably calculated to protect the employment." While the last mentioned eventuality precludes disqualification, the lack of such a finding still leaves open for the fact finder the question of the employee's intent. Because

the distinction between these separate criteria evidently eluded the appeals examiner she took an overly restrictive view of the issue presented and erroneously resolved it under a standard meant only as a threshold to the ultimate question of the employee's intent.

From the transcripts of the two hearings we are satisfied that her misconception so pervaded the proceedings that in the taking of testimony the question of whether claimant intended to sever her employment was virtually overlooked, and the inquiry focused exclusively on whether she had kept the employer informed of her condition. While claimant may have been free to introduce proofs as to her actual intent, she was not represented by counsel, respondent was, and, the point involved being somewhat subtle for lay comprehension, it was the examiner's responsibility to direct the inquiry. Under the circumstances the examiner's failure to guide the hearing into the material areas marked out by *DeLorenzo* unfairly prevented the necessary proofs from developing.

We also note that claimant was denied an opportunity to sum up her claim at the close of the case. While this might not ordinarily trouble us in an appeal from the Board of Review, in this case it compounded the prejudice already suffered by claimant. After a lengthy hearing counsel for respondent (who was, for unexplained reasons, not the Attorney General) requested permission to sum up. He did so and, after reviewing the evidence relevant to claimant's failure to maintain contact with the employer, closed by saying "that she voluntarily terminated her position, by number one; failing to abide by the rules and regulations; and number two, by failing to call up sick; by failing to follow through on all the avenues she had." The allusion to claimant having "voluntarily terminated her position" evidently struck a responsive note because almost immediately thereafter on the same page of the transcript claimant asked "Can I say something?" She was told that she could not,

that the lawyer was arguing "but that is only far [sic] lawyers. You can't say anything at this point. We will close."

Apart from the examiner's misapprehension that summation was reserved only for lawyers, simple fairness dictated that the advantage of summation should not have been reserved solely to the employer. Claimant should have been given the opportunity to make an answering statement at least as to the sole relevant issue in the case which, for the first time, had finally surfaced.

▇ Finally, the question of whether claimant "in fact" voluntarily terminated her employment is not to be governed by Civil Service Rule 4:1–16.14, which mandates that employees who are absent without notice and approval are "held to have resigned." The regulation projects a disciplinary standard, for breach of which the employee may perhaps be discharged and possibly suffer the six-week disqualification for unemployment compensation benefits provided by *N.J.S.A.* 43:21–5(b). However, it does not suffice as proof, in itself, of a voluntary quit under § 5(a) of the statute. It is important to distinguish between the kind of absence from work that justifies firing by an employer and the kind that demonstrates an employee's intention to quit. The working principle is explained in the following language of *Savastano v. State Board of Review*, 99 *N.J.Super.* 397, 400–401 (App.Div.1968):

> It seems plain from a contrastive reading of subsections (a) and (b) that the Legislature, in adopting the language "has left work" in the disqualification subsection (a), was undoubtedly mindful of a distinction between quitting employment and being discharged. Employees frequently leave work temporarily for some fleeting physical or mental irritation, or "in a huff" occasioned by one or more of the frustrations attending commercial life, without intending to quit. Although such an individual may be said to have left work voluntarily and without good cause attributable to the work, thus engaging in conduct which might justify a discharge by the employer, nevertheless such a party may not be said to have "left work" in the meaning of having severed his employment relationship with an intent not to return.
>
> Whether a situation is embraced by subsection (a) or (b) depends upon the facts of each particular case. The central issue, did the employee voluntarily leave in the sense of "quitting" or was he discharged by the employer, is to be determined by the Board upon an analysis of the evidence and specific findings of fact supportive of its conclusion. *See Radice v. N.J. Department of Labor and*

Industry, 4 N.J.Super. 364, 368–369 (App.Div.1949); *Higgins v. Board of Review,* 33 N.J.Super. 535, 540 (App.Div.1955).

That claimant's failure to communicate with her employer does not necessarily reflect an intention to quit her job can be inferred to some degree not only from the fact that she took immediate steps to recover the job but also from the fact that, according to her supervisor, claimant was guilty of the same kind of delinquency in January of the same year but nevertheless returned to work.

Reversed and remanded to the Appeal Tribunal for full rehearing, detailed findings and conclusions and entry of a final determination not inconsistent with this opinion. We do not retain jurisdiction.