206 N.J. Super. 617 (1986)
503 A.2d 381
JUAN S. SANCHEZ, APPELLANT,
v.
BOARD OF REVIEW AND CHAN AND SON ORIENTAL PRODUCTS, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted December 17, 1985.
Decided January 14, 1986.
*619 Before Judges PRESSLER, DREIER and BILDER.
Julio M. Lopez Keelan, pro hac vice, of the Puerto Rico Legal Services and Patrick N. Budd, attorney, Legal Aid Society of Mercer County represented appellant (Mr. Keelan and Mr. Budd, on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney represented Board of Review (Michael S. Bokar, Deputy Attorney General, of counsel; Todd A. Wigder, Deputy Attorney General, on the brief).
No brief was timely filed by respondent Chan and Son Oriental Products.
The opinion of the court was delivered by DREIER, J.A.D.
Claimant, Juan Sanchez, has appealed from an adverse determination of the Board of Review in the Division of Unemployment and Disability Insurance. The Board had affirmed the decision of the Appeals Tribunal which in turn had sustained the deputy who initially heard the case. A trial de novo before the appeals examiner was conducted by a three-way telephone conference in which claimant testified from Puerto Rico through an interpreter. Neither party was represented by counsel.
The facts are relatively simple. Claimant is a migrant worker who had been employed as a farmhand in New Jersey by Chan and Son Oriental Products. He picked vegetables such as lettuce, radishes and garlic and also did some planting. He was paid the minimum wage of $3.35 per hour. After working from approximately July 5 to October 20, 1983, he quit, stating as his reasons:
Because I asked him to buy us some boots, gloves and something to kneel on when we were cutting the lettuce and he said no that we should buy it out of our own money. And he was also deducting 5 or 6 hours worth of work every week.
*620 He obviously had discussed this practice with his employer, since according to claimant the employer justified the deduction as follows:
He said the deductions were made because he gave some time during the break at 9 o'clock in the morning. And that was costing him money.
Claimant further stated that he did not complain to a farm workers' association because a neighboring farmer had fired other employees who had complained. He also had discussed the issue of the protective clothing, but the employer told claimant that he "should buy them out of [his] own money. And the rest should also do so."
Mr. Chan, the employer, testified that claimant took "care of vegetables, oriental vegetables, planting cabbage, ... like a radish, all kinds of stuff." In response to the claim of improper deductions the employer stated:
No. We got proof paper here. And at that time, I think, maybe he signed on the paper is it true and that everything is true and before we issued checks, and he signed the paper.
He denied that the employee asked for boots and gloves. He claimed the employee just ran away. The employer further explained why he provided no gloves, boots or knee pads or mats:
This is a personal property. When he work, he have to get boots, whatever, shoes, whatever, clothes. He has to prepare to work. I have no responsibility to buy for them clothes and the shoes, boots, anything. Except, we supply, furnish to him, lodging, housing  that's it.
Claimant responded that the "clothes were necessary because it was very painful to work without them  our hand were [sic] already bruised all the time and it was very painful."
The Appeals Tribunal found that claimant left the job voluntarily and without notice, and that "the employer was not responsible for providing the claimant with work clothes, gloves or boots." In the opinion of the Tribunal:
The claimant left his job voluntarily in order to leave the area. He did not attempt to resolve his problems with the employer and there is no credible evidence that the working conditions were so bad as to provide good cause attributable to the work for leaving. The employer's failure to provide gloves and boots was not good cause for quitting. A worker could reasonably be expected to provide his own work clothing.
*621 This decision was affirmed on the basis of the record below by the Board of Review.
We find two deficiencies with the decision reached. First, there was an insufficient inquiry into the allegations of an unwarranted deduction from claimant's pay. The claimant already was working for the minimum wage and, therefore, any such unwarranted deduction brought his net pay below that required by law. Such an employment practice is contrary to the declared public policy of this State. N.J.S.A. 34:11-56a3. If approximately one hour's wages per day had been deducted from claimant's pay and thus he was not being paid the required wage for his work, his leaving would have been for cause attributable to the work. Cf. Johns-Manville Products Corp. v. Bd. of Review, 122 N.J. Super. 366, 370 (App.Div. 1973). We do not require adjustment of the wage under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq, as the sole remedy of an underpaid employee. Since the Wage and Hour Law recognizes a civil suit as a cumulative remedy, N.J.S.A. 34:11-56a25, we find no bar to an employee raising this issue in an unemployment compensation case by way of a claim that underpayment motivated his quitting.
The employer's explanation that he had a "proof paper" and that "maybe" claimant had signed the paper left the issue still unresolved. This issue should have been further explored by the examiner. If the hearing had to be continued until copies of the employer's records could be submitted as exhibits or claimant could have obtained corroborative testimony, this should have been accomplished. There was no positive testimony rebutting claimant's assertions of the improper deductions.
The second problem we see with this record concerns the alleged failure of the employer to provide protective clothing such as special boots or gloves or protective equipment such as a kneeling mat or knee pads. The Worker Health and Safety Act, N.J.S.A. 34:6A-1 et seq., provides in N.J.S.A. 34:6A-3:
Every employer shall furnish a place of employment which shall be reasonably safe and healthful for employees. Every employer shall install, maintain and use such employee protective devices and safeguards including methods of *622 sanitation and hygiene and where a substantial risk of physical injury is inherent in the nature of a specific work operation shall also with respect to such work operation establish and enforce such work methods, as are reasonably necessary to protect the life, health and safety of employees, with due regard for the nature of the work required.
This Act has yet to be construed except for one reference in Finnegan v. Havir Mfg. Corp., 60 N.J. 413, 420 (1972), alluding to a factory operator's duty to provide safety guards on a punch press. The statute, however, is not so limited. It encompasses all cases where there might be "a substantial risk of physical injury ... inherent in the nature of a specific work operation." In such cases "employee protective devices and safeguards" are required to be supplied by the employer. There are no specific State regulations which require supplying special boots, gloves or kneeling pads or mats. In fact all regulations issued pursuant to the Act were replaced by the federal regulations hereafter discussed. These federal regulations have by State regulation also been made applicable to New Jersey public employees, N.J.A.C. 12:100-4.2(a).
The federal regulations promulgated under the Occupational Safety and Health Act (OSHA) 29 U.S.C.A. § 651 et seq., 29 C.F.R. § 1910.132 et seq., require specific protective equipment in five areas: eye and face protection (§ 1910.133), respiratory protection (§ 1910.134), head protection (§ 1910.135), occupational foot protection (safety-toe footwear, § 1910.136), and electroprotective devices (§ 1910.137). The general requirements section, however, provides:
§ 1910.132 General requirements.
(a) Application. Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.
(b) Employee-owned equipment. Where employees provide their own protective equipment, the employer shall be responsible to assure its adequacy, including proper maintenance, and sanitation of such equipment.
(c) Design. All personal protective equipment shall be of a safe design and construction for the work to be performed.
*623 Thus we find that pursuant to federal regulation, "personal protective equipment for ... extremities [and] protective clothing ... shall be provided wherever it is necessary by reason of hazards of ... environment ... in a manner capable of causing injury or impairment in the function of any part of the body through physical contact." Subsection (b) of the regulation appears to endorse situations where "employees provide their own protective equipment;" but we read this provision as one authorizing employee-owned equipment to be used rather than sanctioning an employer's requirement that such equipment be supplied by the employee. The omission of the specific equipment requested by petitioner here from the federal regulations in no way diminished the duty of the Appeals Tribunal and Board of Review to determine whether the protection was needed in the case before us. Both the State and federal standards should have been applied. We deem all such remedial legislation or regulations to provide non-exclusive and cumulative rights which should be broadly construed so as to carry out their beneficial purposes.
On appeal to the Board of Review claimant introduced weather data showing that during the period of claimant's employment the temperature on occasion dropped below 50° . While ordinary clothing certainly would not fall within the definition of protective equipment, if kneeling on the cold damp ground and hand-picking hard-stemmed plants required protection beyond the usual clothing, the obligation of the employer to provide such protection may well be deemed to fall within the provisions of N.J.S.A. 34:6A-3, the OSHA regulations or both.
Even on a common-law basis, this case warranted further review by the Appeals Tribunal and Board of Review. The general rule applicable to complaints concerning working conditions is that "mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does not constitute `good cause' for leaving work voluntarily." Assoc. Utility Serv. Inc. v. Bd. of Review, 131 N.J. Super. 584, 587 (App.Div. 1974); Medwick v. Bd. of Review, 69 N.J. Super. *624 338, 345 (App.Div. 1961). Matters of comfort such as excessive heat or lack of air conditioning do not constitute good cause for quitting where there is no medical proof that the heat was injurious to the employee's health. Medwick, at 344-345. Of course, where health hazards are apparent, such medical proof would not be necessary. Being forced to work where there is a great deviation from normal temperatures, however, may constitute such an abnormal condition of employment as to warrant quitting. See, e.g., Surowick v. Dept. of Employment Sec., 133 Vt. 578, 349 A.2d 905 (1975), where benefits were allowed to an aircraft mechanic forced to work in an unheated hangar in the winter; and Bashoff v. Interboro Gen. Hosp., 49 A.D.2d 660, 371 N.Y.S.2d 193 (1975), where the court upheld benefits to an employee who quit due to excessive heat and dust in a hospital's pharmacy. Each case must be decided upon its own facts to determine whether working in an unprotected environment might reasonably be expected adversely to affect an employee's health. The closest case to the one before us appears to be Wallace v. Bureau of Unemployment Compensation, Unempl. Ins. Rep. (CCH) ¶ 1975 § .284 (Ohio Ct. of Common Pleas, 1962), where in a pre-OSHA setting the court found that an employer's refusal to provide safety goggles to a welder constituted good cause for the employee to quit his job.
Here there was a contention that the employer failed to provide that which was necessary to protect the employee from the dangers or health hazards inherent in the work site or in the nature of the employment. Especially where there is a possible violation of remedial social legislation designed to protect a marginally-paid worker, the Appeals Tribunal and Board of Review must measure the employer's actions against the statutory and regulatory standards as well as the general principle that an employee should not be required to work under unhealthful conditions.
We do not here decide whether boots, kneeling mats or knee pads, or work gloves of a type not usually part of a worker's attire are required by the statutory or regulatory prescriptions *625 for protective equipment, clothing, devices or safeguards. Nor need we decide whether the dangers to the employee in this type of employment required action to protect the worker's health. We merely determine that the Appeals Tribunal and Board of Review did not adequately address these issues on a complete record.
The decision of the Board of Review is reversed and this matter is remanded to the Department of Labor for expansion of the record with respect to the issues noted in this opinion and for reconsideration upon such expanded record. As either party may then exercise a right of appeal from such amended determination, we do not retain jurisdiction.