636 A.2d 122

CAROL A. COMBS, CLAIMANT–APPELLANT,
v. BOARD OF REVIEW, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued December 7, 1993—Decided January 21, 1994.

618

Before Judges BRODY, STERN and KEEFE.

*Daniel E. Goldman* argued the cause for appellant (*Wiley, Malehorn & Sirota,* attorneys; *Mr. Goldman* of counsel and on the brief and reply letter brief).

*Ellen A. Reichart,* Deputy Attorney General, argued the cause for respondent (*Fred DeVesa,* Acting Attorney General, attorney;

*Mary C. Jacobson,* Assistant Attorney General, of counsel; *Ms. Reichart* on the letter brief).

The opinion of the court was delivered by

STERN, J.A.D.

Claimant, Carol A. Combs, appeals from a determination of the Board of Review affirming the denial of unemployment benefits. The Deputy Director of the Division of Unemployment and Disability Insurance initially found that Combs "left [her] job because [she] felt that the work was adversely affecting [her] health," despite the fact "[t]here [was] no evidence to indicate that the work either caused or aggravated [her] medical condition." He thus concluded that Ms. Combs "quit [her] job voluntarily and without good cause attributable to the work" and was therefore disqualified from benefits. The Appeal Tribunal affirmed concluding that:

> The claimant in this case left her last job because she perceived that the duties assigned her were hazardous to her health. However, in the absence of a doctor's written verification that the claimant's perception was correct and that, further, a doctor found it medically necessary that the claimant leave her job, she has not shown good cause, attributable to the work, for her resignation.

The Appeal Tribunal therefore affirmed the determination that she was disqualified for the receipt of unemployment benefits under *N.J.S.A.* 43:21–5(a). Finding that petitioner had a "full and impartial hearing and a complete opportunity to offer any and all evidence," the Board of Review denied a further hearing and affirmed on the basis of the Appeal Tribunal's decision. The issue before us principally relates to the burden a claimant must bear when she claims a disability affecting her ability to work, in circumstances involving no contest by the employer to the award of unemployment benefits.

## I.

There is no factual dispute except as the facts relate to the impact of claimant's physical condition. Briefly, Ms. Combs worked for AT & T for twelve and one half years. She worked

from 1979 until 1989 in Phoenix, Arizona. Sometime in 1986 she injured her back while lifting a sixty to eighty pound reel of copper wire on the job. She apparently received treatment and associated therapy as a result of work related compensation. In 1989, her husband, also an employee of AT & T, was transferred to New Jersey. Ms. Combs received a personal leave to seek employment here within the Bell system. In May 1989, she found work at AT & T's Short Hills facility in the mail room.

Ms. Combs again injured her back in November 1990 while lifting a mail bag. She was put on work restriction and was prohibited by AT & T doctors from lifting more than 10 to 15 pounds. However, her supervisor refused to curtail her duties and so gave Combs a thirty-day personal leave in early 1991. Upon returning to work in February 1991, she obtained medical verification from a doctor to whom she had been referred indicating that she could do "no lifting over 10 pounds." The company's medical department instructed her supervisor to "continue restriction" with "no lifting over 15 lbs." and "no pushing or pulling." Thereafter her supervisor assigned her duties which did not require heavy lifting or physical work.

However, in November 1991 a new mail room supervisor, Inez Rogers, took over and informed Ms. Combs that all mail room staff had to perform all duties of the job including lifting mail bags and pushing mail carts. Combs complained that those duties aggravated her condition and caused her great pain. While she asserts that Dr. Comstock of the AT & T medical department acknowledged her pain, the doctor apparently told claimant he could do "nothing else" for her and that she "just [had] to continue doing ... all aspects of the job" as assigned.

Combs declined to do more than she had been previously assigned, and the new supervisor advised her that "if she could not push a mail cart as required," she would consider Combs' behavior as a resignation. Combs asked if that meant she was being terminated and testified that Rodgers responded that "we don't use the word terminate[ ] anymore, we use the word resign."

Combs further testified she told Rodgers "I don't want to quit ...
I need my job ... I want to stay" and that she "tried doing" the
work and could not. Nevertheless, Rogers directed her to sign a
memorandum Rodgers wrote "to the file," which stated that there
was no legal or medical reason for Combs' refusal of responsibili-
ties. The memorandum stated that she explained to Combs that
"if she cannot push a mail cart, as required, then in effect I
consider her behavior as a resignation." She further noted that
Combs' "stimulated resignation is effective January 29, 1992."
Combs signed the memorandum but wrote "forced to resign"
under her signature.

AT & T has not opposed or appeared to oppose any unemploy-
ment benefits and, in fact, Combs asserts that company represen-
tatives told her she would be qualified for unemployment benefits.
She urges that the employer's non-appearance before the Depart-
ment of Labor "creates an inference that the employer could not
show that Ms. Combs' departure was voluntary," citing *Scanlon v.
General Motors Corp.*, 65 *N.J.* 582, 598–99, n. 7, 326 A.2d 673
(1974) (plaintiff's failure to produce an allegedly defective product
created adverse inference as to existence of any defect).

## II.

Ms. Combs first argues that she "had no intention or desire
to resign or quit her employment and thus did not leave work
voluntarily under *N.J.S.A.* 43:21–5(a)". She asserts that "a forced
resignation can be deemed an involuntary discharge" and contends
that when "[a]n employee who wishes to continue employment, but
nonetheless resigns because the employer has clearly indicated
that the employment will be terminated, does not leave voluntari-
ly," quoting *Kane v. Women and Infants' Hosp. of Rhode Island*,
592 A.2d 137, 139 (R.I.1991). Despite the deference which must
be paid to administrative fact-finding (*Henry v. Rahway State
Prison*, 81 *N.J.* 571, 579–580, 410 A.2d 686 (1980); *Doering v.
Board of Review*, 203 *N.J.Super.* 241, 245, 496 A.2d 720 (App.Div.

1985)), and particularly in the absence of any contest to the facts by AT & T, we agree with claimant that the record before us supports the conclusion that Ms. Combs did not leave work voluntarily and that her conduct cannot be considered a voluntary departure or resulted in "a resignation," which by itself excuses the payment of unemployment benefits. *Cf. Yardville Supply Co. v. Board of Review*, 114 *N.J.* 371, 554 *A.*2d 1337 (1989) (professional truck driver who was discharged after losing driver's license found to have left work voluntarily). *See also Trupo v. Board of Review*, 268 *N.J.Super.* 54, 632 *A.*2d 852 (App.Div.1993).

## III.

However, a finding that claimant did not voluntarily quit does not mean that she is necessarily entitled to unemployment benefits. The question becomes whether Ms. Combs is nevertheless disqualified because the employer was justified in discharging her for good cause attributable to the work. Combs again contends that AT & T's non-appearance in any of the proceedings relieves her of any burden of proving that she had a physical condition which prevented her from performing her work, citing *Sanchez v. Board of Review*, 206 *N.J.Super.* 617, 624, 503 *A.*2d 381 (App.Div.1986). The Board of Review contends to the contrary, citing *Wojcik v. Board of Review*, 58 *N.J.* 341, 277 *A.*2d 529 (1971), which held that medical proof offered by an employee that work "may" have aggravated his preexisting, non-work-related condition was insufficient to overturn findings of the Board of Review. Consequently, the parties differ as to whether claimant has the burden to update the medical evidence regarding her condition to the time of discharge and to prove her disability as of that date. The underlying question is whether Ms. Combs could perform the assigned work and, if so, whether she improperly refused to do so. A related issue entails whether the employer acquiesced in a new work assignment which did not require heavy lifting or the pushing of a mail cart at the time of discharge by the new

supervisor.[1]

To be disqualified for unemployment benefits under *N.J.S.A.* 43:21–5(a), Ms. Combs must have left her employment "voluntarily without good cause attributable to such work." The Appeal Tribunal found that she was disqualified for benefits because, in the absence of a doctor's written verification that the duties assigned to her could not be performed for medical reasons, "she [had] not shown good cause, attributable to the work, for her resignation."

Here there is no dispute that claimant's medical condition, whatever its severity, was "attributable" to work with the employer. Nor is there a contest that if she were medically disabled from performing her job due to work related conditions, this would constitute "good cause" under the statute for a "voluntary" quit, thus entitling her to unemployment benefits. *Wojcik v. Bd. of Review, supra,* 58 *N.J.* at 344, 277 *A.*2d 529.[2] On the other hand, if she declined to perform duties she was capable of performing, her work stoppage would not constitute "good cause attributable to such work," and she would not be entitled to benefits. *See also N.J.S.A.* 43:21–5(b) (discharge for "misconduct

---

[1] When we raised this issue at oral argument, the Attorney General with commendable candor acknowledged that there was a question as to whether the employer in essence gave Combs a new and more restricted job and that she may be entitled to a hearing on that issue.

[2] In fact, if an employee is unable to work because job conditions aggravate an illness unrelated to work, there is no statutory disqualification for an employee who attempts to protect his or her employment. *Wojcik v. Board of Review, supra; DeLorenzo v. Bd. of Review,* 54 *N.J.* 361, 363–64, 255 *A.*2d 248 (1969); *Garcia v. Bd. of Review,* 191 *N.J.Super.* 602, 606, 468 *A.*2d 729 (1983).

It is undisputed that Combs attempted to protect her employment and did not wish to stop working. Under this line of cases, there would be no statutory disqualification if her condition was not attributable to work. It stands to reason then, that she should not be in a worse position by virtue of the fact that her condition was, in fact, work related, at least if she remained on the job with the acquiescence of the employer in lieu of seeking workers' compensation benefits.

connected with the work"). This determination hinges on Combs' medical condition at the time of her forced resignation.

Although the record is devoid of medical proofs regarding the nature of claimant's disability at the time of discharge, there is no dispute that Ms. Combs could not lift mail bags over ten to fifteen pounds or push a mail cart at least at the time she was put on work restriction by AT & T's medical department. There was additional documentation that she underwent physical therapy through June of 1991. However, claimant was forced to resign on January 29, 1992, six months after the most recent medical documentation evidencing her disability.

■■■ The claimant normally has the burden of establishing entitlement to unemployment compensation. *Rider College v. Board of Review, Dept. of Labor and Industry*, 167 *N.J.Super.* 42, 47, 400 *A.*2d 505 (App.Div.1979); *Zielenski v. Board of Review*, 85 *N.J.Super.* 46, 51, 203 *A.*2d 635 (App.Div.1964); *Morgan v. Board of Review, Division of Employment Sec.*, 77 *N.J.Super.* 209, 213, 185 *A.*2d 870 (App.Div.1962); *Di Micele v. General Motors Corp.*, 51 *N.J.Super.* 167, 171, 143 *A.*2d 799 (App.Div.1958), *aff'd* 29 *N.J.* 427, 149 *A.*2d 223 (1959). Here the record was established exclusively through the claimant. She testified that after Ms. Rodgers told her she would have to perform all her job duties, including lifting mailbags and pushing mail carts, she tried to comply but found that she "started having a lot of trouble again with pain in [her] back." Ms. Rodgers then sent claimant to the AT & T medical department to see Dr. Comstock. There is no report in the record as to any findings by the doctor at that time. However, Ms. Combs admitted that Dr. Comstock told her that she had to continue doing the job.

As noted above, the Appeal Tribunal concluded that "in the absence of a doctor's written verification that the claimant's perception was correct and that, further, a doctor found it medically necessary that the claimant leave her job, she has not shown good cause, attributable to the work, for her resignation." However, in *Brown v. Board of Review, Division of Employment Sec.*,

*Dept. of Labor and Industry,* 117 *N.J.Super.* 399, 404, 285 *A.*2d 38 (App.Div.1971), where there was a lack of adequate medical evidence that claimant's work duties as a hair stylist aggravated his long-standing diabetic condition to constitute "legal justification" for a voluntary quit, we deemed it "in the interest of justice to reverse the decision of the Board of Review and to remand the matter for a supplemental hearing" on the issue. *Id.* at 405, 285 *A.*2d 38. We follow that approach here. As the Board of Review incorrectly premised its conclusion on the absence of proofs justifying Ms. Combs' resignation, and not on the basis of a discharge, we believe that the record should be further developed as to her medical condition at the time she was discharged and the related issue of "cause."

## IV.

■ The remand proceedings should also explore the nature of the duties claimant was performing at the time of the discharge and the duties she should then have been performing. When Combs returned from the thirty-day leave in February 1991, her then supervisor, after being told of her work restrictions, assigned her more limited duties than those normally given to mail room employees. At oral argument, we inquired as to whether workers' compensation proceedings were commenced at any relevant time and as to the impact of the absence of such proceedings. The parties before us agreed that Ms. Combs' injuries were undoubtedly compensable in that forum, but that she elected not to pursue such a remedy. This was attributed to the fact that AT & T often provided better relief for employees with work related injuries than those who proceed through the Division of Workers Compensation. Considering the case in that context, the question becomes whether claimant was offered and received lesser duties at the same pay in lieu of another remedy for her compensable injuries. Moreover, the issue takes on added significance given the allegation that the employer assured claimant that she would be entitled to unemployment benefits upon execution of her "stim-

ulated resignation." In this context, the absence of any appearance or contest by the employer also takes on added importance.

Generally, "in the absence of a contrary agreement, an employee is hired-at-will" and can be discharged with or without cause. *Bernard v. IMI Systems, Inc.*, 131 *N.J.* 91, 96, 618 *A.*2d 338 (1993); *see also Savarese v. Pyrene Mfg. Co.*, 9 *N.J.* 595, 600–601, 89 *A.*2d 237 (1952). New Jersey has adopted exceptions to the at-will doctrine, including a general public policy exception (*Pierce v. Ortho Pharmaceutical Corp.*, 84 *N.J.* 58, 417 *A.*2d 505 (1980)), as well as a contract exception. In *Woolley v. Hoffmann–LaRoche, Inc.*, 99 *N.J.* 284, 491 *A.*2d 1257, *modified on other grounds*, 101 *N.J.* 10, 499 *A.*2d 515 (1985), the Supreme Court held that statements contained in an employee manual may provide the basis for the finding of an express or implied employment contract, transforming the relationship from one terminable at-will to one terminable only for cause. Similarly, oral representations by the employer's representative may form the basis of a breach of contract action. *Shebar v. Sanyo Business Systems Corp.*, 111 *N.J.* 276, 288, 544 *A.*2d 377 (1988).

In *Shebar*, an employee of Sanyo had told his supervisors that he was going to accept a position with Sony, a competitor. To dissuade him, according to plaintiff, Sanyo induced him to stay and made representations to him regarding his position. He was terminated shortly thereafter, but the Supreme Court found that *Shebar* might have a cause of action for breach of contract. The Court noted that

> circumstances surrounding the statements made to plaintiff were such that a factfinder could infer the terms and conditions of an employment contract from plaintiff's existing employment, namely that Shebar would be employed in the same position at the same salary. Furthermore, the factfinder could infer that Sanyo's promises not to terminate plaintiff's employment existed for a reasonable period of time, and such employment was terminable only for cause.
>
> [*Shebar v. Sanyo Business Systems Corporation*, 111 *N.J.* at 290, 544 *A.*2d 377.]

Similar to *Shebar, supra,* claimant might have had an implied contract with AT & T to accommodate her job related disability. A legitimate question exists as to whether the representations

made by her employer at the time she returned to work in 1991 gave rise to a new job description or more restrictive duties and an understanding that she would be discharged from that position only for reasons unrelated to an inability to perform her former duties. We see no reason why the recent cases relating to employment contracts should not be considered in this context even in the absence of a direct action against the employer for breach of contract.

The judgment of the Board of Review is reversed, and the matter is remanded for further proceedings consistent with this opinion.