**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0215-16T2

BRENDA PARKER,

    Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR AND WORKFORCE
DEVELOPMENT, and MATRIX
PERSONNEL[1] SOLUTIONS, INC.,

    Respondents.

_____

Submitted October 23, 2017 — Decided November 2, 2017

Before Judges Sabatino and Rose.

On appeal from the Board of Review, Department of Labor and Workforce Development, Docket No. 080,028.

Brenda Parker, appellant pro se.

Christopher S. Porrino, Attorney General, attorney for respondent Board of Review (Melissa H. Raksa, Assistant Attorney General, of counsel; Arundhati Mohankumar, Deputy Attorney General, on the brief).

Respondent Matrix Personnel Solutions, Inc. has not filed a brief.

_____
[1] The record at times spells this "Personel."

PER CURIAM

Appellant Brenda Parker ("claimant") seeks reversal of the Board of Review's August 29, 2016 final agency decision rejecting her claim for unemployment benefits. Applying the required deference owed to the Board within its area of expertise, we affirm.

Claimant was employed as a housekeeper for Matrix Personnel Solutions, Inc. ("Matrix"), a company which has not participated in this appeal. She contends that while working at Matrix, she aggravated various medical conditions, including bursitis in her left shoulder and triggering in her right thumb. Claimant received treatment and was excused from work for two days by her treating doctor, Dr. Venkata Jonna, but was found otherwise able to return to work with no restrictions. About a month later, her symptoms worsened.

On November 15, 2015, claimant sent a letter of resignation to her employer's management, stating that she needed to resign because certain job duties such as mopping, vacuuming, and sweeping worsened and aggravated the arthritis in her hand. She indicated in the letter that she was giving the employer two weeks' notice and that she would be willing to return to work if she could be relieved of those specific duties. The employer's manager said he would check with the personnel department, but failed to get

back to her. Claimant did not follow up further on the subject and did not return to work.

Claimant applied for unemployment benefits. The Deputy Director denied her claim upon finding she had left work voluntarily without good cause attributable to the work. Claimant challenged that decision. The Appeal Tribunal conducted an initial hearing in February 2016, at which time claimant testified and a Human Resources representative from Matrix also appeared. Following that hearing, the Appeal Tribunal concluded in its initial February 16, 2016 decision that claimant was disqualified for benefits. Thereafter, the Board of Review remanded the matter back to the Appeal Tribunal for an additional hearing.

The second hearing before the Appeal Tribunal was held on May 24, 2016. This time the employer did not appear. Claimant and her then-attorney appeared, but did not present any live medical testimony. Claimant and her counsel did present her medical records, as well as materials from various medical websites, which claimant relied upon to support her claim of medical aggravation and her alleged need for a reasonable accommodation.

Following the second hearing, the Appeal Tribunal again rejected claimant's claim, concluding on remand that her resignation from her job was "based on a personal assessment of her conditions." The Appeal Tribunal found specifically that

A-0215-16T2

claimant did not "explore her treatment options, or vigorously pursue a solution from the employer in [an] effort to protect her job before tendering her resignation." In addition, the Appeal Tribunal noted that "general medical information obtained from the internet is not a substitute for a medical certification from a doctor."

Claimant again filed an administrative appeal with the Board of Review. This time she presented a certification from a Dr. Lori C. Talbot, a Board-certified family practice physician. Dr. Talbot had not examined claimant, but had reviewed her records.

Dr. Talbot opined that claimant's medical conditions "are consistent with conditions which can be seriously aggravated by work;" that "the work of a housekeeper is consistent with the type of work which could aggravate subacromial bursitis and trigger finger;" and that the medical website information she submitted is "consistent with and accurately describes these conditions and their potential aggravation through work and other activities." Dr. Talbot added that claimant's situation "is consistent with the type . . . appropriate from an individual experiencing severe health effects, but wanting accommodation in order to prevent further health damage."

In its second final agency decision dated August 29, 2016, the Board of Review upheld the continued denial of benefits to

claimant. The Board noted that claimant had been given a full and impartial hearing with the complete opportunity to offer any and all evidence, and that there was no valid ground for a further hearing.

On appeal, claimant argues: (1) her medical conditions meet the tests for substantial aggravation of her health problems and that she therefore should be awarded benefits; (2) her unfulfilled request to her employer for a reasonable accommodation, and the lack of an interactive process to explore such an accommodation, evidences an "unhealthful condition" that violates the law and provides good cause for her termination of employment; (3) she was denied due process by the agency; (4) an adverse inference should be made against her employer because it did not provide competing testimony; and (5) there is substantial and allegedly unrefuted evidence in her favor.

In considering these arguments contesting the Board's final agency decision, we are guided by well-established principles. When reviewing appeals involving unemployment benefits, we accord particular deference to the expertise of the Board of Review, and its repeated construction and application of Title 43. See, e.g., Brady v. Bd. of Review, 152 N.J. 197, 210 (1997); Doering v. Bd. of Review, 203 N.J. Super. 241, 245 (App. Div. 1985). "'[I]n reviewing the factual findings made in an unemployment

compensation proceeding, the test is not whether [we] would come to the same conclusion if the original determination was [ours] to make, but rather whether the factfinder could reasonably so conclude upon the proofs.'" Brady, supra, 152 N.J. at 210 (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)).

"If the Board's factual findings are supported 'by sufficient credible evidence, [we] are obliged to accept them.'" Ibid. (quoting Self v. Bd. of Review, 91 N.J. 453, 459 (1982); Goodman v. London Metals Exchange, Inc., 86 N.J. 19, 28-29 (1981)). Our courts also give due regard to the agency's credibility findings. Logan v. Bd. of Review, 299 N.J. Super. 346, 348 (App. Div. 1997) (citing Jackson v. Concord Co., 54 N.J. 113, 117 (1969)). Unless the agency's action "was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed." Brady, supra, 152 N.J. at 210 (citing In re Warren, 117 N.J. 295, 296 (1989)).

With these governing principles of deference in mind, we turn to the merits of claimant's appeal. The central substantive issue is whether claimant is disqualified for unemployment benefits because she left her position "voluntarily without good cause attributable to such work[.]" N.J.S.A. 43:21-5(a). Personal reasons for termination of employment, no matter how compelling they may be, do not comprise "good cause" under the unemployment

A-0215-16T2

statutes for resignation. Utley v. Bd. of Review, 194 N.J. 534, 544 (2008). A claimant maintains the burden of proof to establish such good cause attributable to the work. N.J.A.C. 12:17-19.1(c).

The pertinent regulations specify that "[w]hen an individual leaves work for health or medical reasons, [a] medical certification shall be required to support a finding of good cause attributable to the work." N.J.A.C. 12:17-9.3(d). In addition, a claimant "who leaves a job due to a physical and/or mental condition or state of health which does not have a work-connected origin but is aggravated by working conditions will not be disqualified for benefits . . . provided there was no other suitable work available which the [claimant] could have performed within the limits of the disability." N.J.A.C. 12:17-9.3(b).

A pivotal issue in applying these laws and regulations is the claimant's medical condition at the time the claimant submits a letter of resignation. Combs v. Bd. of Review, 269 N.J. Super. 616, 624 (App. Div. 1994). The medical proofs must demonstrate that working conditions caused the claimant to suffer medical problems to such an extent as to make resignation medically necessary. See Wojcik v. Bd. of Review, 58 N.J. 341, 344 (1971).

Here, the Appeal Tribunal and the Board reasonably concluded that claimant failed to sustain her burden of proving, at the two hearings, medical necessity to resign. The record shows that

prior to resigning from Matrix, claimant was evaluated and treated by Dr. Jonna. Significantly, in her record dated September 28, 2015, Dr. Jonna excused claimant from work for two days due to trigger finger and shoulder bursitis, but further indicated the claimant could return to work soon thereafter on October 5. In her accompanying narrative report, Dr. Jonna described the conditions and the steroid injections she administered to claimant, but noted no future work restrictions for her beyond the two-day period. Given this information, Matrix had no duty to provide claimant with a medical accommodation scaling back her duties, or to render a decision on the request within the short period of time demanded in claimant's resignation letter.

In addition, after claimant resigned in November 2015, Dr. Jonna authored a follow-up record on May 2, 2016 stating claimant had recovered from her trigger finger and bursitis conditions, and that she "can return to work with no restrictions effective immediately." This follow-up record undercuts claimant's position that she was unable to obtain and perform other employment following her resignation.

We recognize that plaintiff's narrative testimony before the Appeal Tribunal recounted how she had been informed orally by Dr. Jonna that her condition would worsen if she continued to work as a housekeeper, and might require surgery. However, those alleged

A-0215-16T2

statements by Dr. Jonna are not corroborated by the documentary record. As the finder of fact, the Appeal Tribunal was entitled to give little or no credence to claimant's representations about the doctor's hearsay statements.

We agree further with the agency that the Appeal Tribunal was justified in giving little or no weight to medical website materials that claimant printed out from the Internet. At best, those website materials are merely generic in nature and do not rise to the evidential level of a competent diagnosis or prognosis by a licensed physician who had examined the patient.

Nor was the agency required to award benefits to claimant based on the certification she submitted from Dr. Talbot in August 2016 following her loss at the second hearing. The certification was submitted belatedly after claimant had a fair opportunity to present evidence at two hearings before the Appeal Tribunal and prior to the record's close. Moreover, Dr. Talbot never examined claimant, and only performed a "paper review" of her records. In essence, Dr. Talbot's certification was simply too little and too late to aid claimant.

The balance of claimant's arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0215-16T2