**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4024-23

LAVANA WILSON,

     Appellant,

v.

BOARD OF REVIEW,
DEPARTMENT OF LABOR and
AT&T MOBILITY SERVICES LLC,

     Respondents.

_____

Argued November 19, 2025 – Decided January 7, 2026

Before Judges Smith and Jablonski.

On appeal from the Board of Review, Department of Labor, Docket No. 328278.

Lavana Wilson, appellant, argued the cause on appellant's behalf.

Kaitlyn McDonald, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Christopher Weber, Assistant Attorney General, of counsel; Ryne A. Spengler, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Lavana Wilson appeals from a final decision of the Board of Review, New Jersey Department of Labor (Board), which disqualified her from receiving unemployment benefits. We reverse and remand for further fact-finding and a decision on petitioner's claim because both the Appeal Tribunal (Tribunal) and the Board failed to consider medical testimony relevant to its determination that she left her employment voluntarily without good cause attributable to her work as required by N.J.A.C. 12:17-9.1.

I.

Petitioner was employed as a fraud analyst by AT&T Mobility Services, LLC (AT&T). During her tenure, AT&T instituted a seasonal policy mandating overtime. Petitioner advised her supervisor she could not comply with these overtime requirements due to insufficient childcare. Although she suggested alternate arrangements, AT&T rejected them. Petitioner ultimately satisfied the overtime requirement by taking intermittent leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 to 2654.

During this period, petitioner was diagnosed with depression and anxiety by her physician, which she attributed to personal circumstances, including a stressful relationship with her child's father and her recent brain surgery. She

A-4024-23

informed her supervisor of her mental health struggles, who directed her to AT&T's Human Resources (HR) department. HR referred her to the Employee Assistance Program (EAP) and she received therapy through it.

Petitioner additionally claimed she experienced a difficult work environment and described incidents of micro-management and unprofessional behavior, such as verbal altercations during a fire drill and a manager yelling on the office floor. Although she verbally raised these concerns with management and her union, she did not file a formal complaint.

Petitioner's last working day was January 17, 2023. After using her accrued vacation days, she resigned on February 20, 2023. When she departed, she was not subject to disciplinary action nor was her position threatened. Her record did not reflect any performance issues.

Petitioner applied for unemployment benefits on February 19, 2023. The Division of Unemployment Insurance (Division) denied her claim, concluding she had voluntarily resigned without good cause attributable to her work on January 15, 2023. Petitioner then appealed to the Tribunal which upheld the Division's determination but corrected the disqualification date to February 19, 2023. She appealed to the Board.

The Board remanded the matter to the Tribunal, noting:

there [was] a need for additional testimony from the [petitioner] and the employer about whether the [petitioner's] condition of health was attributable to the work, whether working conditions were adverse and duly grieved prior to her leaving, and thus whether [petitioner] had good cause attributable to the work for leaving.

At the outset of the remand hearing, the Appeals Examiner (examiner) gave preliminary instructions about the hearing process:

So, all- now, all testimony during the hearing will be recorded. It will be taken under oath. I'm going to begin by reading, identifying information into the record, and then I'm going to administer the oath to the [petitioner]. After I swear you in . . . , I'll be asking specific questions of you. And once we've completed my questions, [the employer representative] you'll have an opportunity to question [the petitioner] as well. Then I believe I swear in [the employer witness], I will ask any questions that I have of [him] after I swear him in. Then [the employer representative], followed by [petitioner] will have an opportunity to question [the employer witness] as well. And then we'll allow for both [the employer representative] and [petitioner] to address the record in closing. The closing statements will end the hearing, and at the end a decision will be made in writing and sent to all parties by mail.

Notably, petitioner was not advised she could present additional witnesses nor could she introduce evidence to support her claim. There was no mention of her ability to provide medical testimony.

4

A-4024-23

At the remand hearing, the examiner stated the issues were the "potential voluntary leaving of work" and "refusal of suitable work." Despite the Board's directive, the examiner did not specifically identify petitioner's mental health, nor whether these conditions or the exacerbation of the conditions were attributable to her work as an issue to be addressed.

Nevertheless, the issue of petitioner's mental health was raised:

> EXAMINER: So I believe that there was a discussion or testimony provided of a diagnosis of anxiety and depression. Is that correct, Ms. Wilson?
>
> [PETITIONER]: Yes, that is correct.
>
> EXAMINER: Ok. And do you recall when that was initially diagnosed by any chance?
>
> [PETITIONER]: It was in October of 2022.
>
> EXAMINER: Okay. And would you be able to . . . be able to briefly identify the known cause of the anxiety and depression.
>
> [PETITIONER]: Yes.
>
> EXAMINER: Okay, if you can. I'm ready for you.
>
> [PETITIONER]: Okay, [t]he main reason for me leaving the company was due to my mental health []. And that was the reason why I appealed it, because in my end, the decision that you made . . . you never even mentioned.

EXAMINER: Well, hold up. Hold on one second. I'm not asking you to speak openly about the process. I'm asking you very specifically to identify the causes of the anxiety and depression.

[PETITIONER]: Okay. So, the cause had came a year before I had gotten brain surgery. After my brain surgery, I have recently had a baby. So, I you know, due to, you know, personal reasons between my child's dad and I, things started to spiral out of control. I went to my doctor. I explained to him what I was feeling, what I was going through. He wound up diagnosing me with the depression the anxiety. He even put me on medication. When I went into work, I did feed this information to my immediate supervisor . . . . When I explained to her what I was going through. She had –

EXAMINER: Hold on one second. Not to cut you off, but just when you said you—you mentioned this now to your- to your supervisor. Can you give me a reference as to when that was?

[PETITIONER]: I mentioned it to my supervisor. It was like around October, November of 2022 when I mentioned this to her.

. . . .

[PETITIONER]: I told her everything.

Petitioner was referred to AT&T's EAP[1] and received five therapy sessions. She also applied for FMLA leave, which AT&T granted. The

---

[1] Employee Assistance Program.

 A-4024-23

examiner summarized the document authorizing FMLA, which included

petitioner's physician's conclusions about her mental health:

> Okay. Very Good. So we'll make this claimant Exhibit 1. The first page is just a notice of eligibility on October 22, [2022] you notified us of your need to take family medical leave of your own health condition. You notified us that you need this leave beginning 10/21/22 except as explained below, your eligibility has been reviewed and you are eligible for leave under the following policies. . . . FMLA 12 weeks starting availability, and it just kind of explains . . . the rights under that. So, the second page, . . . so it's signed by the employee on October 24, 2022.
>
>     . . . .
>
> I just want to know that on page two, part A, at the bottom, is medical facts. It says, [d]oes the patient's condition qualify as serious health condition under FMLA? And the part is yes or no and yes is checked off and yes has a serious health condition, which is an illness, injury impairment or physical or mental condition that involves inpatient care as defined and or continuing treatment by a health care provider as defined in. And so I just wanted to note the serious health care condition was checked off.
>
>     . . . .
>
> Okay. So I'm on page three. It just states, a serious health condition means illness, injury, impairment or physical. Again, that involves the following and then checked off is chronic conditions requiring treatment. Approximate date condition commenced October 21[], 2022. Probable duration of condition. Three months. Was the patient admitted for overnight? No. . . .dates

of last visit for this condition? 11/2/22. Would the patient need to have treatment visits at least twice per week? At least twice per year due to the condition? Yes. Was medication other than over-the-counter prescribed? Yes. Was the patient referred to any other health care provider for evaluation and treatment? Yes.

. . . .

Is the employee unable to perform any of his/her job functions during- due to this? Due to the condition? Yes. If yes, identify the job functions. The employee is unable to perform mandatory overtime.

. . . .

Will the employee be incapacitated for a single continuous period of time due to his or her medical condition, including any time for treatment and recovery? Yes. If yes, provide the beginning and end dates. 10/21/22 and 1/31/23. Estimated return to work date, 2/1/23.

. . . .

Cause episodic flare ups. Yes and no is checked off. It looks like yes may have been liked checked in more because it's darker. But it goes on to explain. So, is it medically necessary for the employee to be absent from work during the flare ups? Yes. And then it says, and a 15-minute, 15-minute breaks every hour and then two days per week. So it looks like maybe that's two days off per week and then 15-minute breaks every hour.

. . . .

Okay. And if yes, estimate the frequency of flare ups. Frequency; two episodes per week. Duration eight hours. Additional information. Recommend extra breaks at work plus two days. Okay, two extra days off per week to help her relieve stress and recover.

When asked whether AT&T followed her doctor's recommendations, petitioner responded:

Honestly, not necessarily[.] [T]hey complied because it was paperwork, that these were the conditions. But it [] was made very hard for me to have it. . . . I was being ridiculed for what [] I had to adhere to, which is the additional breaks and things like that.

The examiner explored this issue further, and petitioner explained she encountered resistance and ridicule when trying to take the breaks required under her FMLA accommodations. When asked whether she possessed medical documentation confirming her working conditions were impacting or aggravating her mental health condition, petitioner replied: "No. There is no paperwork from the doctor with that, no."

In its written decision, the Tribunal summarized the hearing testimony, reviewed the relevant law, and concluded petitioner was disqualified from receiving benefits, finding:

[Petitioner] voluntarily left her employment with the employer of record, effective 02/20/2023, due to mental health issues and because she was dissatisfied with the working conditions. While the claimant was

well within her right in leaving the job, she has not shown good cause attributable to the work for leaving gainful employment to join the ranks of the unemployed.

[Petitioner] did not provide any medical evidence to support that the job either caused or aggravated her mental health condition. Also, the claimant contended that she was bullied and targeted by way of micro-management. However, she had no warnings or disciplinary action taken against her, and she was under no threat of termination. Her contention is rejected as unfounded.

Petitioner administratively appealed, and the Board affirmed the Tribunal's decision in a written order, stating:

Although the reasoning in the OPINION section of the decision of the Appeal Tribunal lacked depth, we nonetheless agree that the record, which we now find to be both complete and sound does not reflect that the claimant has lifted the burden upon her (N.J.A.C. 12:17-9.1(c)) of demonstrating she had "good cause attributable to [the] work" (N.J.S.A. 43:21-5(a)) for leaving such work voluntarily. That is, she has not shown that her condition of mental health was attributable to the work by the standards set forth in N.J.A.C. 12:17-9.3, nor has she shown that she was subjected to abnormal working conditions which were "so compelling as to give [her] no choice but to leave the employment." (N.J.A.C. 12:17-9.1(b)).

On appeal, petitioner asserts her resignation was medically necessary and represents good cause attributable to the work under N.J.A.C. 12:17-9.1(a) and (b). She contends that a proper review of the record, with particular

10

emphasis on the substantial medical evidence and her FMLA documentation, compels a finding that her departure was not wholly "voluntary" under the applicable statute and regulation, and that both the Tribunal and the Board erred in denying her benefits pursuant to N.J.S.A. 43:21-5(a).

The Board maintains that petitioner resigned voluntarily and without good cause, arguing petitioner made a "unilateral decision to resign despite no threat of termination, no disciplinary actions, and the continued availability of her position. There is no evidence that [petitioner] was having abnormal working conditions so severe that she was deprived of the choice of remaining at her job."

## II.

Our review of administrative agency final decisions is limited with petitioners carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011); Brady v. Bd. of Rev., 152 N.J. 197, 218 (1997). An agency's determination must be sustained "unless there is a clear showing that it is arbitrary, capricious, or unreasonable or that it lacks fair support in the record." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Hermann, 192 N.J. 19, 27-28 (2007)).

A-4024-23

"[I]f substantial evidence supports that agency's decision, a court may not substitute its own judgment for the agency's even though the court might have reached a different result." In re Carter, 191 N.J. 474, 483 (2006) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). "However, the exercise of such deference is premised on our confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd. of Rev., 339 N.J. Super. 29, 33 (App. Div. 2001).

The burden of proof rests with the employee to establish a right to collect unemployment benefits. Brady, 152 N.J. at 218. Under N.J.S.A. 43:21-5(a), a person is ineligible for unemployment benefits if they leave work voluntarily, without "good cause attributable to such work", defined by N.J.A.C. 12:17-9.1(b) as a "reason related directly to the individual's employment which was so compelling as to give the individual no choice but to leave the employment." "The decision to leave employment must be compelled by real, substantial and reasonable circumstances not imaginary, trifling and whimsical ones." Domenico v. Bd. of Rev., 192 N.J. Super. 284, 288 (App. Div. 1983) (citations omitted). "Mere dissatisfaction with working conditions which are not shown to be abnormal or do not affect health, does

12

not constitute good cause for leaving work voluntarily." Ibid. (quoting Medwick v. Bd. of Rev., 69 N.J. Super. 338, 345 (App. Div. 1961)). A petitioner who leaves work for a personal reason, no matter how compelling, is subject to disqualification. Self v. Bd. of Rev., 91 N.J. 453, 460 (1982). The employee's reason for quitting must be directly related to the employment and "so compelling as to give [the employee] no choice but to leave the employment." N.J.A.C. 12:17-9.1(b).

A determination whether an individual is disqualified for benefits for leaving work voluntarily without good cause attributable to such work under N.J.S.A. 43:21-5(a) requires a fact sensitive determination. Haley v. Bd of Rev., 245 N.J. 511, 521 (2021). The Court explained "the [Unemployment Compensation Law (UCL)], [N.J.S.A. 43:21-1 to -71], 'must be construed liberally in favor of an allowance of benefits.'" Haley, 245 N.J. at 520 (citing McClain v. Bd. of Review, Dep't of Labor, 237 N.J. 445, 461-62 (2019)). This is done to comport with the UCL's remedial purpose of "'providing[ing] some income for the worker earning nothing, because [the worker] is out of work through no fault of [their] own.'" Ibid. (quoting Utley v. Bd. of Review, 194 N.J. 534 (2008)).

Despite the Board's instruction to consider "additional testimony" regarding whether petitioner's "condition of health was attributable to the work," we conclude the Tribunal failed to conduct the necessary fact-sensitive analysis of the petitioner's diagnosed mental health condition. Specifically, the Tribunal did not sufficiently analyze how living with this condition, combined with AT&T's alleged resistance to her requested accommodation, may have influenced her decision to leave her employment. Consideration of this contention is essential for a proper resolution of her claim. Consequently, the Board was deprived of this information and analysis when it conducted its review of the Tribunal's decision.

Further, in its preliminary remarks as to how the hearing was to proceed, the Tribunal limited the scope of the hearing only to the testimony of the petitioner, the employer witness, and argument:

> I'll be asking specific questions of you. And once we've completed my questions, [the employer representative] you'll have an opportunity to question [the petitioner] as well. Then I believe I swear in [the employer witness], I will ask any questions that I have of [him] after I swear him in. Then [the employer representative], followed by [petitioner] will have an opportunity to question [the employer witness] as well. And then we'll allow for both [the employer representative] and [petitioner] to address the record in closing. The closing statements will end the

> hearing, and at the end a decision will be made in writing and sent to all parties by mail.

In not providing instructions for a full hearing, nor even inquiring about whether petitioner would wish to call other witnesses or provide documentation to meet the Boards requirement that "additional testimony" be taken, including, but not limited to her therapist or the medical professional who authorized her FMLA leave to substantiate her claims, the examiner improperly limited the hearing and consequently deprived petitioner of the opportunity to provide a complete presentation of her case. DeBartolomeis v. Bd. of Rev., 341 N.J. Super. 80, 87 (App. Div. 2001); Rivera v. Bd. of Rev., 127 N.J. 578, 583 (1992) (petitioner must "be given a real chance to present [their] side of the case before a government decision becomes final."). The "touchstone of [an] adequate [adjudicative] process is not an abstract principle but the needs of a particular situation." Ibid.

Additionally, the examiner only superficially acknowledged petitioner's medical issues. The examiner did not substantively analyze those challenges in light of the other testimony from the employer's witness in the Tribunal's written decision. The Board itself acknowledged this deficiency, observing that the Tribunal's analysis lacked "depth."

15

The record before us does not demonstrate careful consideration of the relevant facts, nor does it contain appropriate findings addressing the core issue in dispute. Petitioner is entitled to a full evaluation of all of the proofs available before a ruling is made on the validity of her claim. Therefore, we remand for a new hearing toward that end.

At that hearing, petitioner is entitled to submit further medical proofs of her own and the Tribunal should specifically analyze that proof to ascertain whether these conditions constituted legal justification for petitioner to leave her employment voluntarily. Combs v. Bd. of Rev., 269 N.J. Super. 616, 624 (App. Div. 1994) (citing Brown v. Bd. of Rev., Div. of Employment Sec. Department of Labor and Industry, 117 N.J. Super. 399, 404 (App. Div. 1971) (holding that in certain circumstances where there is a lack of medical evidence, the "interests of justice" might require a remand to the Board for a supplemental hearing.)).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division